IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

APRIL 1998 SESSION

FILED

June 25, 1998

Cecil W. Crowson
Appellate Court Clerk

|  |  |  |
|---|---|---|
| STATE OF TENNESSEE , | ) |  |
| APPELLEE | ) |  |
|  | ) |  |
| VS. | ) | C.C.A. No. 01C01-9707-CC-00252 |
|  | ) | LAWRENCE COUNTY |
|  | ) | Honorable James Weatherford |
| RODNEY J. D. SMITH | ) |  |
| APPELLANT. | ) | (SENTENCING) |

FOR THE APPELLANT

Shara A. Flacy
Public Defender
22nd Judicial District
128 N. Second St.
Pulaski, TN  38478

Daniel J. Runde
Assistant Public Defender
22nd Judicial District
128 N. Second St.
Pulaski, TN  38478

FOR THE APPELLEE

John Knox Walkup
Attorney General and Reporter
425 Fifth Avenue, N.
Nashville, TN  37243

Karen M. Yacuzzo
Assistant Attorney General
425 Fifth Avenue, N.
Nashville, TN  378243

Mike Bottoms
District Attorney General
P. O. Box 459
Lawrenceburg, TN  38464

James G. White
Assistant District Attorney General
P. O. Box 459
Lawrenceburg, TN  38464

OPINION FILED:  _____

**AFFIRMED**

L. T. LAFFERTY, SPECIAL JUDGE

**OPINION**

The defendant presents an appeal as of right from the judgment of the trial court denying probation or an alternative sentence. On December 6, 1996, the defendant entered a plea of *nolo contendere* in cause #15,529 to facilitation to commit murder second degree, agreeing to a sentence of eight (8) years; in cause #15,298, to the offense of robbery, agreeing to a sentence of three (3) years consecutive to #15,529; in cause #15,299, in counts one and two to the offense of robbery, agreeing to a sentence of six (6) years concurrently on each count; in cause #15,300, in counts one and two to the offense of robbery, agreeing to a sentence of six (6) years concurrently on each count; and in cause #15,301 to the offense of robbery, agreeing to a sentence of four (4) years consecutive to causes #15,529 and #15,298. The agreed sentence was a Range I, maximum of 15 years and it was understood the defendant would seek probation or an alternative sentence.

As part of the plea agreement, the State agreed to *nolle prosequi* causes #15,283 and #15,284, safe-cracking and burglary third degree; #15,331 making a false report to police; and #15,364 burglary second degree.

After a review of the record and applicable law, we find that the trial court did not err in denying the defendant's request for probation and/or an alternative sentence. The trial court's judgment is affirmed.

## HISTORY

The facts in this record are somewhat unusual in that the commission of these offenses occurred in 1988-89, and the conclusion was in 1997. The record establishes, originally, the defendant was accused in cause #15,297 of felony murder and armed robbery of Bartlett Marston on January 29, 1989, via a knife. The defendant's brother, James E. Smith, Jr., and uncle, Michael McConnell were indicted as co-defendants. In

2

causes #15,298, #15,299, #15,300 and #15,301, the defendant was accused of six counts of armed robbery involving six different victims between January 22, 1989, and January 30, 1989. The defendant, also, had been accused in causes #15,283 and #15,284 with safe-cracking/burglary third, on January 17, 1989; #15,331, making false report on December 10, 1988; and #15,364, burglary second on December 20, 1988.

The record reflects that the defendant and his brother, James E. Smith, Jr., went to trial on indictment #15,297 on May 6, 1991, before the Honorable William B. Cain, Criminal Court for Lawrence County. On November 20, 1990, the co-defendant, Michael McConnell, had plead guilty to murder second degree, receiving a sentence of 70 years. As part of his plea agreement, McConnell agreed to testify in behalf of the State against both Smiths. McConnell, upon being called as a witness, refused to honor his plea agreement and refused to testify against the Smiths. In an out of jury hearing, McConnell did testify the Smiths were a part of the murder of Bartlett Marston. On May 8, Judge Cain, after a conversation with the assistant District Attorney General, *sua sponte* granted a mistrial. At re-trial, the defendant filed a motion to dismiss on the grounds of double jeopardy. Special Judge Allen Cornelius denied the motion and permitted an interlocutory appeal to the Court of Criminal Appeals. In *State v. Smith,* 871 S.W.2d 677 (Tenn. 1994), the Supreme Court denied the motion and remanded the case for a new trial. The defendant was then reindicted in #15,529 for felony murder, first degree murder, and armed robbery of Marston. The armed robbery accusations were known in Lawrence County as the "Amish robberies."

The record before us does not contain a transcript of the stipulated facts entered at the plea proceedings as to the exact involvement of the defendant in these criminal offenses. The State argues that since the defendant failed to include a transcript of the plea hearing, this Court should not consider the merits of the defendant's claim. The

3

defendant counters that the entry of a plea of *nolo contendere* does not require the trial court to accept a factual basis for the plea, citing *Raybin, Tennessee Criminal Practice and Procedure* §§ 22.14, 22.102. We agree with the defendant that sufficient facts were developed at the sentencing hearing for this Court to conduct a proper review. The State had ample opportunity to submit this transcript.

## SENTENCING HEARING

The defendant submitted an array of impressive evidence to assist the trial court in its determination of the request for probation and/or an alternative sentence. Testifying for the defendant were his wife, Diana Smith and his employer, Steven Cheatwood. The defendant also testified. Several certificates of awards, including a G.E.D. certificate and five letters in support of the defendant's request were admitted at the hearing.

A summary to the evidence reveals that the defendant was released on bail in the amount of $50,000 on June 10, 1991, while awaiting a re-trial. Prior to the defendant's arrest, he had been trained as a Geriatric Nursing Assistant and was employed at the Lawrenceburg Manor Nursing Home. The defendant was arrested February 2, 1989, for these offenses. While in the Lawrence County Jail, the defendant achieved the status of trustee and studied courses for obtaining a G.E.D., which he obtained upon release. Upon release, the defendant found sporadic employment until November, 1991. During September, 1991, the defendant was married and subsequently divorced. In November the defendant found employment at the Lawrenceburg Manor Nursing Home as a nurse technician where he met his wife, Diana Smith.

Mrs. Smith testified that she worked with the defendant on and off for four years at the nursing home. They married on October 7, 1994. Mrs. Smith had two children, ages seven and eight, who treated the defendant as their father. Mrs. Smith describes the defendant's relationship with her children as very good. He helps with their

4

homework, assists in getting them ready for school and is supportive of her and the children. The defendant has established a good relationship with Mrs. Smith's family by putting a roof on her aunt's home and helping a family member move to Tennessee. Mrs. Smith describes her husband as a good worker, who brings his paycheck home and does not drink or use illegal drugs. As to the murder charge, Mrs. Smith testified that the defendant denies any involvement, but admits to the "Amish robberies" as stupid and he "feels terrible about it." In conclusion, Mrs. Smith loves her husband and is sure he will abide by any conditions of probation or an alternative sentence imposed by the Court.

The defendant's employer, Mr. Steven Cheatwood, testified he hired the defendant in 1995 as a bricklayer. Mr. Cheatwood described the defendant as being a very good worker, dependable, gets along well with his fellow employees and has no drinking or drug problems. At the time of the hearing the defendant was making $9.00/hour and if he remained employed, the defendant could expect $14.00/hour and possibly be made a foreman. Mr. Cheatwood testified he would continue to employ the defendant if Mr. Smith were placed on work release.

In his testimony, the defendant described his family background, educational progress and work history until these charges. The defendant corroborated the testimony of his wife and employer about his family and employment history. The defendant tendered to the court the results of a polygraph examination in regard to his alleged involvement in the Marston murder. It was alleged the results would corroborate or support the defendant's claim of innocence. The trial court permitted, over the State's objection, a proffer, but ruled the results would not be considered by the Court in its determination. As to the Marston murder the defendant consistently maintained his innocence and entered his *nolo* plea in order to bring "some resolution and some

resolvement to the case for all parties concerned, including the victim's family." In open court, the defendant advised the Marston family, "I truly feel sorry for you and I hope that this will bring some kind of resolution to you, and I'm truly sorry." As to the "Amish robberies," the defendant admitted his involvement attributing the reason being as "riding around, drinking, and smoking dope ... I was quite young, dumb, and stupid and I'm here to take my responsibility for that." There was little or no cross-examination by the State of the defendant.

Mr. Steven Long, grandson of the victim Bartlett Marston, the murder victim, testified it was not necessary for the defendant to kill his grandfather and that they could have done something else besides stabbing him sixteen times. The record established that the victim was quite elderly, in poor health, and had limited hearing. The Court infers Mr. Long was in opposition to any alternative relief for the defendant. Also, Mrs. Virginia Long, daughter of the victim, testified about her father's condition and age of eighty-eight years. Mrs. Long was in opposition to any probation for the defendant.

The trial court, in its opinion, set out several reasons for the denial of probation and an alternative sentence. The trial court commented on the defendant's achievements upon release from jail, his steady employment, care of his family, and no legal problems other than the seriousness of these multiple violent offenses. The trial court stated:

> Like I say, I think the State has shown mercy and I think that this court has shown mercy in accepting the fifteen year sentence. But when I look at this record and every crime that I'm dealing with here is a crime of violence against a person, and I have to take into consideration the victims here which, as I mentioned, was an eighty-eight year old man who was in poor physical condition and couldn't move around without a walker, and then I believe every other person that was a victim was Mennonite, which as I mentioned is very passive people who don't resist. They'll give you whatever they've got, but they won't resist. They won't commit violence.
>
> So under these circumstances, I could not feel satisfied with this

6

fifteen year sentence, which I feel shows mercy on the part to the state and the part of this court for accepting it, I feel that Mr. Smith has received an abundance of mercy in this case.

I'm going to impose the sentence agreed upon between the State and the defendant, which is a fifteen year sentence and that will be to the Department of Correction[].

## SENTENCING CONSIDERATIONS

When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). Therefore, the burden of showing that the sentence is improper is upon the appealing party. *Id.* The presumption that determinations made by the trial court are correct is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166 (Tenn. 1991); *State v. Smith,* 898 S.W.2d 742 (Tenn. Crim. App. 1994).

If appellate review reflects the trial court properly considered all relevant facts and its finding of facts are adequately supported by the record, this Court must affirm the sentences, "even if we would have preferred a different result." *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In arriving at the proper determination of an appropriate sentence, the trial court must consider (1) the evidence, if any, received at the plea of guilty or in these facts *nolo contendere* and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about the sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210 (a), (b) (1997); *State v. Holland*, 860 S.W.2d 53 (Tenn. Crim. App. 1993).

In this case the trial court was required to consider an application for full probation or an alternative sentence, such as work release, split confinement or weekends in custody. Based on the decision of the trial judge to deny any relief we conduct our review with the presumption that the trial judge was correct.

## PROBATION/ALTERNATIVE SENTENCE

First, we will address the denial of full probation. Since the defendant entered *nolo* pleas to the reduced offenses of robbery, which are Class C felonies, the defendant is presumed to be a favorable candidate for probation, in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). In *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), this Court cited four factors which, although "not controlling the discretion of the sentencing court" should be considered in determining the appropriateness of probation:

(1) The nature and characteristics of the crime, under Tenn. Code Ann. § 40-35-210 (b)(4) (1990);

(2) The defendant's potential for rehabilitation under Tenn. Code Ann. § 40-35-103(5) (1990);

(3) Whether full probation would "unduly depreciate the seriousness of the offense," under Tenn. Code Ann. § 40-35-103(1)(B) (1990); and

(4) Whether a sentence of full probation would "provide an effective deterrent" under Tenn. Code Ann. § 40-35-103(1)(B) (1990).

As to the defendant's plea of *nolo contendere* to the offense of facilitation to commit murder second degree, which is a Class B felony, the defendant is not entitled to the presumption to be a favorable candidate for alternative sentence. Thus the burden is on the defendant to establish reasonable grounds for relief.

In arriving at its decision, the trial court considered the requirements of Tenn. Code Ann. § 40-35-103(1990):

(1) Sentences involving confinement should be based on the following

8

considerations:

>(A)  Confinement is necessary to protect society by restraining the defendant who has a long history of criminal conduct;

>(B)  Confinement is necessary to avoid depreciating the seriousness of the offense *or* confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

>(C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

The trial court in its analysis commented on Tenn. Code Ann. § 40-35-103, subsections (A) and (C) and, more particularly, the defendant's lack of trouble with the law since release on bail, family relationships, and steady employment.  Also, Tenn. Code Ann. § 40-35-103(C) was not applicable since the defendant had not been on prior restrictive confinement.  It is obvious that the trial court found "that confinement was necessary to avoid depreciating the seriousness of the offense" and believed the violent nature and numerous offenses called for incarceration.

The defendant argues that the trial court utilized deterrence as an invalid factor to deny alternative relief because there was no affirmative proof that these offenses would act as a deterrent to like-minded persons in Lawrence County.  The trial court did not mention the word deterrence in its ruling but was referring to the first part of Tenn. Code Ann. § 40-35-130(B).

This Court has held it was proper for trial courts to deny full probation because of the nature and/or seriousness of offenses:

>In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offenses as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement.

*Bingham,* 910 S.W.2d at 454 (quoting *State v. Hartley*, 818 S.W.2d 370 (Tenn. Crim.

9

App. 1991)); *Zeolia, supra* at 462.

The limited facts surrounding the death of Bartlett Marston, an eighty-eight-year-old man in very poor health, stabbed 16 times without justification, and with less than $100 stolen from him, could very easily fall within the descriptive terms, *supra*.

Also, the trial court can consider that these crimes involved violence against six different individuals with deadly weapons, and one involved the death of an elderly person, combined with intoxication and abuse of drugs, in determining whether probation or an alternative sentence is appropriate. *State v. Butler,* 880 S.W.2d 395, (Tenn. Crim. App. 1994); *State v. Gennoe*, 851 S.W.2d 833 (Tenn. Crim. App. 1992); *State v. Hollingsworth,* 647 S.W.2d 937 (Tenn. 1983).

In conclusion, we find the trial court did not abuse its discretion in denying an alternative sentence to the defendant and affirm the trial court's judgment.

_____
L. T. Lafferty, Special Judge

**CONCUR**:

_____
Gary R. Wade, Presiding Judge

_____
Thomas Woodall, Judge