STATE of Tennessee, Appellee,

v.

Norman Bernard BUTLER, Appellant.

Court of Criminal Appeals of Tennessee,
at Nashville.

April 7, 1994.

Michael J. Flanagan, Nashville, for appellant.

Charles W. Burson, Atty. Gen., and John B. Nisbet, III, Asst. Atty. Gen., Nashville, Dan Mitchum Alsobrooks, Dist. Atty. Gen., and Chris Young, Asst. Dist. Atty. Gen., Charlotte, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Norman Bernard Butler, appeals as of right from his conviction for criminally negligent homicide, a Class E felony, which he received in a jury trial in the Dickson County Circuit Court. He was sentenced as a Range I, standard offender to two years of which one year is to be served in confinement and to perform two hundred hours of public service work. He contends (1) that the statutory definition of criminal negligence violates due process for vagueness, (2) that the trial court erred by instructing the jury that a nontestifying eyewitness, Patricia Harrington, had asserted her Fifth Amendment privilege and would not testify, and (3) that the trial court erred in requiring confinement as part of the sentence.

The defendant was charged with first degree murder. The case concerns the September, 1990, shooting of one Robert Douglas at the home of his sister-in-law, Patricia Harrington. The victim was shot in the thigh, the bullet penetrating an artery, and he bled to death.

The evidence reflects that the victim, the defendant, Harrington, and Harold and Evelyn Lawson were together at Harrington's home on the night in question. Mr. Lawson stated that the victim was drunk and that he was very obnoxious when he drank. He said that Harrington was very drunk and that the defendant was drinking. The Lawsons went home and, later, the defendant and Harrington appeared at their house. The defendant told Mr. Lawson that the victim had been threatening him with a knife, that the defendant got a rifle, and that the victim grabbed the rifle and, in effect, shot himself in the leg. The defendant also told Mr. Lawson that the bullet struck the defendant in the finger. Mr. Lawson testified that he helped the defendant leave the area and that Mrs. Lawson and Harrington went back to the scene. The defendant put the rifle into Mr. Lawson's truck. Lawson and Harrington were charged as accessories after the fact, but Lawson had an agreement to plead to a misdemeanor for giving false information to the police.

The state presented other witnesses who testified about aspects of the crime scene and the obtaining of physical evidence. The

state's intent was to show that the events did not occur as portrayed by the defendant and that the killing was unlawful and intended.

The defendant testified that the victim held a knife to his throat and threatened him. He said he went to another room and retrieved a rifle. He stated that he placed it upon a table and told the victim not to pull a knife again. He claimed that the victim grabbed for the gun and that it discharged while the two were struggling. He denied having pulled the trigger.

## I

■ Criminally negligent conduct which results in death constitutes criminally negligent homicide. T.C.A. § 39–13–212(a). The defendant contends that the following definition of criminal negligence in T.C.A. § 39–11–106(a)(4) is unconstitutionally vague:

"Criminal negligence" refers to a person who acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint....

This same definition of criminal negligence appears in T.C.A. § 39–11–302(d) relative to culpable mental states. The defendant contends that the definition is, simply, incomprehensible.

■ Due process requires that a statute which criminalizes conduct be sufficiently clear in order to provide adequate warning to a person of what conduct is prohibited.

The fair-warning requirement embodied in the due process clause prohibits holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). A statute fails the due process requirements if it is so vague and standardless that the public is uncertain of the conduct prohibited or if it leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in any given case. *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447 (1966).

*State v. Ash,* 729 S.W.2d 275, 279–80 (Tenn. Crim.App.1986).

■ In looking at the drafting of legislation as an art, suffice it to say that the definition of criminal negligence would not qualify as a masterpiece. However, absolute precision or certainty is not required. *State v. McDonald,* 534 S.W.2d 650, 651 (Tenn.), *cert. denied,* 425 U.S. 955, 96 S.Ct. 1733, 48 L.Ed.2d 200 (1976). Due process is not violated merely because a statute could have been drafted with greater precision or contains some vagueness. "All the Due Process Clause requires is that the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden." *Rose v. Locke,* 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). Thus, even if a statute may be considered vague relative to its prohibiting certain conduct, it may be viewed sufficiently clear regarding other conduct.

In simple terms, the statutory definition of criminal negligence relates to (1) the defendant's conduct, (2) a substantial and unjustifiable risk existing at the time of the conduct or resulting from the conduct, (3) the defendant's failure at the time of the conduct to perceive the risk, and (4) that failure being a gross deviation from the standard of care of an ordinary person under the circumstances. The Sentencing Commission Comments to T.C.A. § 39–11–302(d) state that the definition "is in line with case law of Tennessee on the degree of negligence required for criminal culpability." In this respect, criminal negligence has historically been recognized as an appropriate standard for assessing criminal liability. *See, e.g., State v. Davis,* 798 S.W.2d 268, 271–72 (Tenn.Crim.App. 1990). We conclude that the statutory definition provides adequate notice of what conduct is covered.

■ Also, T.C.A. § 39–11–301(a)(2) provides that intentional, knowing or reckless

acts, as those mental states are defined, will suffice to establish criminal negligence as well. In this respect, what differentiates recklessness from criminal negligence is the degree of awareness—that is, recklessness includes awareness, but disregard, of a risk while criminal negligence involves a lack of awareness when one should be aware. *See State v. Owens,* 820 S.W.2d 757, 760 (Tenn. Crim.App.1991); T.C.A. § 39–11–302(c) and (d). Thus, to prove a criminally negligent homicide, the evidence can show an intentional or knowing killing which is unjustified or a killing which was proximately caused by reckless or criminally negligent conduct. Due process was not violated by the defendant's conviction for criminally negligent homicide.

## II

■ The defendant contends that the trial court erred by instructing the jury regarding Patricia Harrington's not testifying because she had asserted her Fifth Amendment privilege. At the end of its case-in-chief, the state raised a concern about the defense seeking to have the jury adversely infer from the state's failure to call Harrington as a witness that she would present testimony unfavorable to the state. The state requested that such an argument would be unfair without the trial court instructing the jury about Harrington's assertion of her Fifth Amendment privilege not to testify. In response, the defendant acknowledged that he intended to argue that the state could have made a deal with Harrington, as it had with Lawson, in order for her to testify and that its failure to make such a deal should be considered by the jury adversely to the state. However, he objected to any instruction about Harrington having asserted constitutional privilege.

The trial court noted that Harrington was the only purported, nonparty eyewitness to the events and that the jury would unquestionably speculate as to why she was not called. It concluded that the best way to proceed was to instruct the jury regarding Harrington's assertion of privilege and to allow the defendant to argue about the state's choosing not to immunize or make an

agreement with Harrington in order for her to testify. Thus, before the defense proof began, the trial court instructed the jury as follows:

You have heard during the trial that Patricia Harrington was one of the persons who was present, apparently, during this incident. You have also noted that Ms. Harrington did not testify. Ms. Harrington did not testify because she exercised her rights under the Fifth Amendment. As you recall, she is charged as being an accessory after the fact to this alleged crime and she has a right not to testify about matters that will later come back to haunt her, so to speak, under the Fifth Amendment, so she has elected not to do that.

Normally, that's not mentioned to the jury, but it is the feeling of the Court that you ought to know that, so that you would not draw any improper inferences from the fact that you did not hear from her. You should not speculate as to what she might have said, might not have said or anything. Just simply treat it as if she were totally unavailable to testify and you don't know what she would say at all. Am I clear on that?

During his summation to the jury, the defendant referred to the trial court's instruction that the jury was not to speculate on what Harrington could say, but he argued that it was within the state's power to bring her forward to testify.

The defendant contends that the instruction was improper and prejudiced him because it would lead the jury to an inference that Harrington had done something illegal after the shooting which would, further, lead them to an inference that the defendant must have committed a crime. In *State v. Dicks,* 615 S.W.2d 126, 129 (Tenn.), *cert. denied,* 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981), our supreme court stated that a jury was not entitled to draw any inferences favorable to either party from the decision of a witness to exercise a constitutional privilege against testifying. Also, it quoted from *United States v. Johnson,* 488 F.2d 1206, 1211 (1st Cir.1973), relative to the trial court having the discretion to refuse to allow a

witness to take the stand if it appears that the witness intends to claim the privilege as to essentially all questions to be asked. 615 S.W.2d at 129.

We do not believe the supreme court intended to create an absolute bar to a jury being made aware of the assertion of testimonial privilege by a putative witness. We note that it is common for witnesses to assert privilege during their testimony. The primary intent expressed in *Dicks* is to prohibit an undue risk of the jury making an improper inference from the assertion.

In this case, as the trial court noted, the evidence showed Harrington to be a singularly important witness to the events in issue. It was faced with the defendant's expressed intent to have the jury draw an inference adverse to the state for Harrington not testifying. It could have refused to allow the defendant to argue such an inference. However, it chose, instead, to end any speculation about why Harrington did not testify and to instruct the jury not to speculate about what she knew. Under the circumstances, we cannot say that the trial court abused its discretion in giving such an instruction.

■ Relative to the contents of the instruction, the defendant expresses particular concern about the trial court's statement that Harrington had a right not to testify "about matters that will later come back to haunt her, so to speak." The defendant asserts that the trial court thereby implied that Harrington was, in fact, guilty and that, therefore, the defendant must be guilty. The defendant's reasoning appears to be based upon the requirement that an accessory after the fact cannot be convicted without the actual commission of a felony by an offender whom the accessory aids. *See* T.C.A. § 39–11–411. We agree that the trial court's statement which explained the privilege in terms of avoiding "matters that will later come back to haunt her" was inappropriate. However, we conclude that it was harmless in the context of the full instruction and the circumstances in this case.

The jury was instructed not to draw any inferences from the assertion of privilege and not to speculate about what Harrington might have been able to say. In most circumstances, we presume that a jury follows limiting instructions. *See State v. Barton*, 626 S.W.2d 296, 298 (Tenn.Crim.App.1981); *State v. Tyler*, 598 S.W.2d 798, 802 (Tenn. Crim.App.1980). Also, a similar instruction was not given in the trial court's final instructions to the jury before it deliberated. In its closing argument, the state, without objection, claimed that the defendant committed murder and that Harrington tried to hide important evidence of that fact. This was a valid argument from the evidence presented. It would require mere speculation to conclude that the jury focused upon this one phrase in the trial court's midtrial instructions, drew the several inferences which the defendant now fears, disregarded the remaining instructions, and then found the defendant guilty of criminally negligent homicide because of its prejudiced view.

## III

■ The defendant contends that the trial court erred in denying him full probation. The trial court rendered an excellent record of its findings and determinations relative to the length of the sentence imposed. It did not believe the defendant's account of the events given the physical evidence, but it did not consider this as the type of untruthfulness which would affect sentencing. It found that the defendant was not guilty of an intentional or willful homicidal act and that the evidence showed the defendant to be criminally negligent. It considered a lot of the pertinent events to have resulted from the intoxication of the participants. The trial court stated that the defendant did not act in the victim's best interests after the shooting, but attributed his conduct to intoxication, panic and ignorance. It found that the defendant had a previous counterfeit conviction, but that it was almost twenty years old and should not be counted against him. Indeed, it found that he had a previous history of willingness to comply with conditions of a sentence involving release into the community. Relative to probation, the trial court stated the following:

In addition, though, the Court finds that suspension of sentence would not be appropriate due to the fact that a death did

occur and it simply is inappropriate to suspend a sentence involving a negligent homicide where someone lost his life because of the negligence of the defendant and simply to avoid depreciating the seriousness of this offense.

The defendant contends that the mere fact that a death resulted from his criminally negligent conduct is not sufficient to overcome the presumption afforded him by T.C.A. § 40–35–102(6) as a Range I, Class E felon that he is a candidate for a sentencing alternative to confinement so as to justify denying him probation. For some reason, the state's response does not address the probation issue, but only argues that the defendant is statutorily ineligible for a community corrections sentence because the offense involved a crime against a person. *See* T.C.A. § 40–36–106(a)(2).

■ Appellate review of the manner in which a sentence is to be served is *de novo* on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40–35–401(d). In conducting a *de novo* review, we must consider (1) the evidence, if any, received at the trial and sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the need and potential for rehabilitation or treatment. T.C.A. §§ 40–35–102, –103 and – 210; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

The leading case to guide our decision is *State v. Travis*, 622 S.W.2d 529 (Tenn.1981), in which the supreme court analyzed considerations which apply to the issue of probation when an inherently serious, but probation-eligible offense is committed. Travis pled guilty to involuntary manslaughter arising from his operation of an automobile at high speed and ensuing accident in which his three passengers were killed. He received an indeterminate sentence of not less than one nor more than four years, which at the time normally related to actual confinement of one year or less if probation were denied.

The trial court denied probation and the supreme court's relevant analysis of the case was in the context of the denial being based solely upon the nature of the offense.

The court stated that if the legislature provided probation eligibility for a particular offense, the mere fact that the offense was committed is an insufficient basis to deny probation. 622 S.W.2d at 533–34; *see Franks v. State*, 543 S.W.2d 613, 615–16 (Tenn.Crim.App.1976). It concluded that denial of probation cannot be based solely upon the nature of the offense unless it is clear that the offense, as committed, is "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree" so as to outweigh all other factors in favor of probation. 622 S.W.2d at 534.

Relative to the specific issue before us, the court provided guidance for considering homicide offenses which carry probation eligibility. It referred to *Kilgore v. State*, 588 S.W.2d 567 (Tenn.Crim.App.1979), in which this court denied probation based upon the nature of the offense of voluntary manslaughter. This court stated that "exceptional circumstances must be shown in order to support probation in a case involving the death of another person at the hands of the petitioner" and noted that the record demonstrated callous and violent activity which could have justified a first or second degree murder conviction. 588 S.W.2d at 568. In distinguishing *Kilgore*, the court relied upon the fact that there was "no lingering question as to the degree of intent on Travis' part" and that he did not act with any actual intent to harm his passengers. *Travis*, 622 S.W.2d at 535. For this reason, the court could not say that Travis committed "a violent or heinous crime such as could in and of itself preclude a grant of probation under our case law." *Id.* It remanded the case to the trial court for determination of whether the offense was of a nature sufficiently aggravated to outweigh the evidence presented on his behalf.

■ Thus, the fact that the death of another results from the defendant's conduct does not, alone, make the offense sufficiently

violent to justify a denial of probation nor can it be viewed as sufficient evidence to overcome the presumption in T.C.A. § 40-35–102(6). In this case, the trial court's findings and conclusions reflect that it required confinement solely because the defendant's conduct caused a death. Such a conclusion is unjustified under *Travis*. Likewise, by finding that the defendant's conduct constituted criminal negligence and was not susceptible to a conclusion that, factually, the offense could have been first or second degree murder, the trial court has materially distinguished the circumstances in the defendant's case from those which existed in *Kilgore*. Under these circumstances, we conclude that the presumption of correctness which attaches to the trial court's sentencing determinations has been overcome.

However, this does not necessarily mean that the defendant is entitled to outright probation. The trial court's detailed findings, supported by the evidence, reflect that the intoxicated defendant's bringing a loaded rifle into his argument or altercation with the very intoxicated victim greatly, but unjustifiably, enhanced the risk of fatal consequences. This is further shown by the defendant unjustifiably leaving the victim bleeding to death. The trial court attributed this action partly to the defendant's intoxication, but such does not justify the conduct. We cannot ignore the obvious fact that intoxication and firearms make a deadly combination and such a combination was created by the defendant in this case. In this respect, the defendant's conduct immediately before and after the shooting reflect such reckless disregard for the safety of others, particularly the victim, that it justifies some confinement to avoid depreciating the seriousness of the offense, as committed, even though the defendant would otherwise be a favorable candidate for full probation. T.C.A. § 40-35–103(1)(B).

The voluntary combining of intoxication with dangerous instrumentalities is a matter of serious public concern and the defendant's conduct created sufficiently serious circumstances so as to deny full probation. *See, e.g., State v. Cleavor,* 691 S.W.2d 541 (Tenn. 1985). Therefore, we determine that the defendant shall be confined in the Dickson County Workhouse for six months and the remainder of the two-year sentence shall be suspended and served upon supervised probation. Eligibility, if any, for program or work release during confinement or for earlier release from confinement shall be determined by the trial court upon proper motion. The defendant shall perform three hundred hours of public service work and comply with other terms and conditions of probation as required by the trial court.

The conviction is affirmed. The sentence is affirmed as modified and the case is remanded to the trial court for entry of an appropriate judgment in accordance with this opinion.

BIRCH and WHITE, JJ., concur.