IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1998 SESSION

FILED

January 12, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,        )
                           )
    Appellee,           )       No. 03C01-9706-CR-00208
                           )
                           )       Washington County
v.                         )
                           )       Honorable Arden L. Hill, Judge
                           )
RAYMOND PAUL DUNCAN,       )       (Sentencing)
                           )
    Appellant.          )


For the Appellant:                    For the Appellee:

John T. Milburn Rogers                John Knox Walkup
Jerry Laughlin                        Attorney General of Tennessee
100 South Main Street                      and
Greeneville, TN 37743                 Sandy C. Patrick
                                      Assistant Attorney General of Tennessee
                                      425 Fifth Avenue North
                                      Nashville, TN 37243-0493

                                      David E. Crockett
                                      District Attorney General
                                      Route 19, Box 99
                                      Johnson City, TN 37601

                                      Michael Laguardia
                                      Assistant District Attorney General
                                      P.O. Box 38
                                      Jonesborough, TN 37659


OPINION FILED:_____


SENTENCE MODIFIED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, Raymond Paul Duncan, appeals as of right from his conviction upon a guilty plea in the Washington County Criminal Court for voluntary manslaughter, a Class C felony. He was sentenced as a Range I, standard offender to five years confinement to be served in the custody of the Department of Correction. The defendant presents the following issues for our review:

> (1) whether the trial court erred by applying Tenn. Code Ann. § 40-35-114(10), that the defendant had no hesitation about committing a crime when the risk to human life was high, to enhance the sentence;
>
> (2) whether the trial court erred by failing to apply Tenn. Code Ann. § 40-35-113(2), that the defendant acted under strong provocation, to mitigate the sentence;
>
> (3) whether the trial court erred by refusing to apply Tenn. Code Ann. § 40-35-113(11), that the defendant's conduct was not motivated by a sustained intent to violate the law, to mitigate the sentence;
>
> (4) whether the defendant's sentence of five years confinement is excessive; and
>
> (5) whether the trial court erred by denying probation.

We modify the sentence to three years, six months confinement in the custody of the Department of Correction.

The record reflects that at about 1:00 a.m. on March 22, 1996, the defendant and his friend, Brian Osborne, became involved in an altercation with the victim, Kyle Jaekel, and several of Jaekel's friends outside Poor Richards, a bar/restaurant in Johnson City. Two fights occurred simultaneously, one between Osborne and Jaekel's friends and another between the defendant and Jaekel. In the fight between the defendant and Jaekel, the defendant pulled out a knife and stabbed Jaekel in the abdomen. An employee broke up the fight, and Jaekel died a short time later from massive bleeding resulting from the stab wound.

2

Brian Osborne testified at the sentencing hearing. He stated that he and the defendant went to Poor Richards at approximately 9:30 p.m. and that he drank three or four glasses of beer during the evening. He stated that he saw a female acquaintance, Jamie Cagle, talking to Jaekel. He stated that he did not know Jaekel but that Cagle looked very intoxicated, and he thought Jaekel might be trying to take advantage of her. He said Jaekel was encouraging Cagle to drink, and he became concerned for her safety. Osborne said he asked Cagle if she needed a ride back to her dormitory, and Cagle said that she did not. He testified that when his girlfriend, Deena Kilgore, arrived at approximately 12:30 a.m., he asked Kilgore to ask Cagle if she needed a ride to her dormitory. He said Cagle again said that she did not, and she also said that Jaekel was a friend of her boyfriend. Osborne stated that he, Kilgore, and the defendant then left Poor Richards.

Osborne testified that they were in the parking lot, talking for a few minutes before they left, when Jaekel came running outside shouting at them. Several of Jaekel's friends followed him. Osborne said that Jaekel yelled, "What did you think I was going to do to her?" and then pushed the defendant. Osborne testified that he stepped between the two, putting his hands up to control the situation, but that Jaekel then punched him in the nose. He stated that he was then attacked by several of Jaekel's friends. He said that his girlfriend managed to pull him into her car but that Jaekel's friends pulled him back out and threw him on top of the car. He said the police arrived shortly thereafter and arrested him. He testified that he suffered a deviated septum as a result of the altercation.

Osborne testified that he did not see the fight between the defendant and Jaekel and that he did not know that the defendant had used a knife. He stated that he knew the defendant owned a knife and that one time the defendant showed him the knife as he was cleaning it.

3

Dr. Merry Miller, a psychiatrist, testified that the defendant was a student at East Tennessee State University when she began treating him in 1995 for schizoaffective disorder at the university clinic. She said the defendant had been treated previously at the Quillen Dishner School of Medicine. She stated that although schizoaffective disorder is characterized by marked mood swings and depression, she believed that the stabbing was an isolated incident and that the defendant did not pose a risk of harm to others. She also stated that if the defendant were incarcerated, there would be a risk of decompensation, and the defendant might have suicidal thoughts. She testified that she continued to treat the defendant after the stabbing and that the defendant needed supportive therapy and continued medication. She said that the defendant went through a period when he was not taking his medication regularly. She also stated that he was not taking his medication regularly at the time of the stabbing.

Dr. Eric Engum, a clinical psychologist, testified that he evaluated the defendant after the stabbing. He testified that although the defendant was suffering from schizoaffective disorder on the night of the stabbing, the defendant was not manifesting any symptoms that would have compromised his ability to judge reality. He stated that the disorder probably affected the defendant's behavior after the stabbing. He also testified that the defendant showed clear signs of remorse.

Matthew Sikes, a resident assistant at Jaekel's dormitory, testified that he saw Jaekel the night of the stabbing before Jaekel went to Poor Richards. He stated that Jaekel appeared to be intoxicated and that Jaekel said that he was going to go out and "kick some ass."

Deena Kilgore, Brian Osborne's girlfriend, testified that she arrived at Poor Richards at approximately 1:00 a.m. She stated that she did not know Jamie Cagle but that at Osborne's request, she asked Cagle if she needed a ride home. She said that

4

Jaekel was standing next to her when she asked Cagle if she needed a ride home and that Jaekel heard her tell Cagle that they were afraid Jaekel might be trying to take advantage of her. She stated that Cagle laughed and said that she was fine. Kilgore testified that she, Osborne, and the defendant left Poor Richards shortly thereafter and went to the parking lot. She said that a few minutes later, Jaekel came out with several of his friends. She stated that Jaekel then pushed the defendant and that when Osborne stepped between them, Jaekel said he was going to kick Osborne's ass, and he punched Osborne in the nose. She said that Osborne was then attacked by a group of Jaekel's friends and that she tried to pull Osborne into her car, but Jaekel's friends pulled him out and continued the fight. She stated that she did not directly see the fight between the defendant and Jaekel, but she could see some of the fight out of her peripheral vision. She stated that she believed there were other men besides Jaekel fighting with the defendant.

The testimony from the preliminary hearing of John Liggett, an employee of Poor Richards on the night of the stabbing, was admitted into evidence. At the preliminary hearing, Liggett testified that when he went outside to stop the fight, he saw Osborne and Jaekel about twenty-five feet away, pushing each other and yelling. He stated that as he started to walk towards them, he saw the defendant take a swing at Jaekel then back away. He said the defendant was leaning against a car when Jaekel came towards him and the two became entangled, at which time Liggett broke the two men apart, told Jaekel to go back into Poor Richards and asked the defendant to leave. Liggett stated that he did not realize that Jaekel had been stabbed, and he did not see the defendant with a knife. Liggett also stated that because he did not go outside immediately when the fight began, he did not see who initiated the fight.

Jonathan Felthouse testified that he arrived at Poor Richards at approximately 9:30 p.m. He stated that he saw part of the altercation outside Poor

5

Richards. He said that Jaekel and his friends left Poor Richards and that Jaekel was arguing with Osborne outside. He testified that although he did not see either Jaekel or the defendant throw a punch, it looked like the defendant may have pushed Jaekel first. He stated that the defendant and Jaekel then became entangled. He said that he did not see the defendant stab Jaekel. He also said that Jaekel was approximately five feet, eleven inches tall, weighed approximately one hundred sixty pounds, and that the defendant was much bigger. Felthouse admitted that he did not see the beginning of the fight because he did not go outside immediately when the altercation began.

Jamie Cagle testified that she was talking to Jaekel at Poor Richards on the night of the stabbing. She stated that Jaekel was a friend of her boyfriend and that Jaekel never forced or encouraged her to drink. She stated that she did not see the altercation outside Poor Richards.

Sergeant Debbie Barron, with the Criminal Investigation Department of the Johnson City Police Department, testified that investigators were sent to Poor Richards to process the scene of the stabbing. She stated that witnesses were questioned at the police station and that officers began searching for the defendant, who had left Poor Richards after the stabbing. She said that officers looked for the defendant at his dormitory and at his parents' house, but they were unable to locate him. She said that she was notified by the Greeneville Police Department at approximately 11:15 a.m. on March 22 that the defendant had turned himself in to the authorities. The knife used in the stabbing was then introduced into evidence. Sergeant Brown testified that when the defendant was arrested, he stated that he did not realize that he had killed Jaekel and that he thought Jaekel would have to go to the hospital for a few stitches. Sergeant Brown stated that the autopsy report revealed Jaekel's blood alcohol content to be .148.

6

Jeff Jaekel, the victim's father, read a prepared statement to the court in which he expressed the impact of Jaekel's death on his family. He stated that Jaekel's death was a horrifying experience for both Jaekel's older brother and his younger sister. He also stated that the victim was a man of integrity who was the heart of the Jaekel family. He asked the trial court to sentence the defendant to the maximum sentence available under the law and not to consider expunging the conviction from the defendant's record.

An autopsy report was admitted into evidence. The report reflects that Jaekel was five feet, eleven inches tall, and weighed approximately one hundred forty to one hundred fifty pounds.

A presentence report was introduced into evidence. The report reflects that the then twenty-two-year-old defendant was five feet, eleven inches tall and weighed one hundred eighty-five pounds. He was a student at East Tennessee State University at the time of the stabbing and had also attended the University of Alabama and Auburn University. The report reflects that the defendant began using alcohol at age sixteen and used marijuana from age eighteen to twenty-one. It also reflects that the defendant was in excellent physical health but was taking medication and being treated for schizoaffective disorder and depression.

At the conclusion of the sentencing hearing, the trial court sentenced the defendant to five years confinement. The trial court applied Tenn. Code Ann. § 40-35-114(9), that the defendant used a deadly weapon, and Tenn. Code Ann. § 40-35-114(10), that the defendant had no hesitation about committing a crime when the risk to human life was high, to enhance his sentence. The defendant does not challenge the application of factor (9). The trial court also found the following mitigating factors to be applicable, as listed in Tenn. Code Ann. § 40-35-113:

7

(3) substantial grounds exist to excuse or justify the defendant's conduct, though not establishing a defense;

(6) the defendant lacked substantial judgment because of his youth;

(8) the defendant was suffering from a mental or physical condition that significantly reduced his culpability;

(9) the defendant assisted the authorities; and

(13) the defendant showed remorse.

The trial court stated that it gave little weight to mitigating factor (6).

## I.  Length of Sentence

The defendant contends that the trial court erred in sentencing. Specifically, the defendant argues that the trial court should not have applied enhancement factor (10), should have applied two additional mitigating factors, and did impose an excessive sentence in light of the number and weight of enhancement and mitigating factors.  The state contends that the defendant was properly sentenced.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct.  Tenn. Code Ann. §§ 40-35-401(d), -402(d).  As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper.  This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred.  State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness that accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."

8

State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).  In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. Tenn. Code Ann. § 40-35-210(f) (1990).

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1995).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf and (7) the potential for rehabilitation or treatment.  Tenn. Code Ann. §§ 40-35-102, -103, -210 (1990); see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

The sentence to be imposed for a Class C felony is presumptively the minimum in the range unless there are enhancement factors present.  Tenn. Code Ann. § 40-35-210(c) (1990).  Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors.  Tenn. Code Ann. § 40-35-210(d), (e) (1990).  The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record.  Tenn. Code Ann. § 40-35-210 (1990), Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

9

First, the defendant contends that the trial court erred by finding that he had no hesitation about committing a crime when the risk to human life was high to enhance his sentence. Tenn. Code Ann. § 40-35-114(10). The defendant argues that because this factor is an essential element of the offense of voluntary manslaughter, it cannot be applied to enhance his sentence unless there were other people present at the time of the stabbing who were in danger. The state concedes that factor (10) is an element of the offense of voluntary manslaughter, but it argues that there were other people at risk when the defendant stabbed Jaekel.

We agree with the defendant that the trial court erred by applying enhancement factor (10). A trial court cannot enhance a defendant's sentence when the factor used to enhance is an essential element of the offense. Tenn. Code Ann. § 40-35-114. The test for determining whether an enhancement factor is an essential element of an offense is whether the same proof necessary to establish a particular element would also establish the enhancement factor. See Jones, 833 S.W.2d at 601. Under the facts of this case, we agree that factor (10) is inherent in the offense of voluntary manslaughter. This does not end our inquiry, though, because factor (10) may be applied if there were others present besides the victim who were at risk because of the defendant's conduct. Id. The rationale is that when there are others at risk besides the victim, a greater culpability exists than that required to prove the specific offense. Id. at 603.

Nevertheless, we still conclude that factor (10) should not have been applied, because under the facts of this case, no other people were placed at risk when the defendant stabbed Jaekel. Although the testimony is somewhat conflicting on the specific details of the fight between the defendant and Jaekel, the record indicates that the defendant and Jaekel were entangled with each other when the stabbing occurred. No one was in immediate risk of harm, other than Jaekel. In addition, no one was

aware that the defendant had a knife, and no one knew that Jaekel had been stabbed. Even the man who broke up the fight between the defendant and Jaekel testified that he was not aware that the defendant had a knife, nor was he aware that Jaekel had been stabbed. Because the facts indicate that no one other than the victim was placed at risk when the stabbing occurred, the trial court improperly applied factor (10) to enhance the defendant's sentence.

Next, the defendant argues that the trial court should have applied as a mitigating factor the fact that the defendant acted under strong provocation. See Tenn. Code Ann. § 40-35-113(2). The defendant claims that factor (2) is applicable because the defendant merely responded to the victim, who initiated the altercation. This court's holding in State v. Baxter, 938 S.W.2d 697, 706 (Tenn. Crim. App. 1996) is instructive on this issue. In Baxter, the defendant was convicted of second degree murder after he stabbed his business partner in the stomach following an altercation that the defendant claimed was initiated by the victim. Id. at 699-700. This court determined that factor (2) was not applicable because it was the defendant who escalated the conflict by producing the knife. Id. at 706. The same conclusion is warranted in the instant case. Although the defendant may have been provoked to enter into the altercation, the provocation was not strong enough to justify the defendant's use of deadly force, particularly in light of the fact that the victim was unarmed. In this respect, we do not see the existence of provocation that would justify further mitigation. We hold that the trial court did not err by failing to apply mitigating factor (2).

The defendant contends that the trial court erred by failing to apply as a mitigating factor the fact that he committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the conduct. See Tenn. Code Ann. § 40-35-113(11). We conclude that the trial court erred by not applying this factor.

11

In refusing to apply mitigating factor (11), the trial court stated that everyone is presumed to know the law and that the defendant intended to violate it. Factor (11) does not depend upon whether the defendant was aware of the law and intentionally violated it but rather upon whether the defendant's conduct indicated a sustained intent to violate the law. We conclude that the defendant's conduct did not indicate such an intent. This court has previously determined that factor (11) was applicable to a conviction of reckless homicide when the defendant shot the victim outside a bar following an altercation. In State v. Bobby Joe Russell, No. 03C01-9608-CR-00319, Polk County (Tenn. Crim. App. Sept. 16, 1997), app. denied (Tenn. Apr. 27, 1998), this court stated that "the homicide arose from a rapidly arising set of circumstances that does not lend itself to a conclusion that a sustained intent existed relative to the homicide." The same is true in the instant case in that the defendant responded to a situation that, unfortunately, ended in tragedy. Based on these facts, we conclude that the trial court erred by refusing to apply factor (11) to mitigate the defendant's sentence.

The defendant contends that the trial court's imposition of a sentence of five years confinement is excessive in light of the number and weight of mitigating factors compared to the number and weight of enhancement factors. Because the trial court erred by applying enhancement factor (10) and by failing to apply mitigating factor (11), our review of the defendant's sentence is de novo on the record with no presumption of correctness. See Ashby, 823 S.W.2d at 169. Thus, we must start with the presumption that the defendant is entitled to the minimum sentence of three years, then apply the enhancement and mitigating factors. Tenn. Code Ann. § 40-35-210(c).

We give great weight to enhancement factor (9), that the defendant used a deadly weapon. Although no evidence exists that the defendant was intoxicated at the time of the stabbing, the fact remains that the defendant voluntarily brought a

12

dangerous instrument into a drinking establishment, where other patrons were intoxicated, and readily used it on the victim. Obviously, the result of the altercation would not have been fatal were it not for the defendant's possession and use of the knife. We also give great weight to mitigating factor (11), that the defendant had no sustained intent to violate the law. We give moderate weight to factors (9) and (13), that the defendant assisted the authorities and displayed remorse, because these factors tend to militate in favor of the defendant's amenability to rehabilitation.

We give little weight to mitigating factors (3), (6) and (8). With respect to excuse or justification, although the defendant may have been justified to some extent in responding to the victim's claimed aggression, he exceeded the scope of the justification when he used deadly force. We give little weight to the fact that the defendant was relatively young because there is no indication that he was a particularly immature twenty-one-year-old, and he was in college and working. With respect to the defendant's mental condition, we believe this factor deserves little weight because the defendant's doctors testified that the stabbing was an isolated incident and that his disorder was not a factor in the stabbing. Furthermore, even if the disorder did play a role in the incident, the defendant must accept the responsibility because he was not taking his medication regularly when the stabbing occurred. After applying and weighing the enhancement and mitigating factors, we determine that a sentence of three years and six months is appropriate.

## II. Manner of Service

Finally, the defendant argues that the trial court erred by denying alternative sentencing. As a Range I, standard offender convicted of a Class C felony, the defendant is presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). This presumption may be rebutted upon finding any of the following factors: (1) confinement is necessary to protect society by restraining a

13

defendant who has a long history of criminal conduct; (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or (3) measures less restrictive than confinement have been frequently applied unsuccessfully to the defendant. See Tenn. Code Ann. § 40-35-103(1); Ashby, 823 S.W.2d at 169; Fletcher, 805 S.W.2d at 787-88.

In the present case, confinement is not necessary to protect society by restraining a defendant with a long history of criminal conduct, Tenn. Code Ann. § 40-35-103(1)(A), because the defendant has absolutely no history of criminal behavior or convictions. In addition, because there have been no measures less restrictive than confinement attempted, Tenn. Code Ann. § 40-35-103(1)(C) is also inapplicable. The state contends that confinement is necessary to avoid depreciating the seriousness of the offense. Tenn. Code Ann. § 40-35-103(1)(B).

The trial court stated that confinement was necessary to avoid depreciating the seriousness of the offense, remarking that the crime was especially violent, horrifying, and reprehensible. The only basis the trial court noted for its conclusion was the disparity in size between the defendant and the victim.

It is well established that the fact that a defendant's conduct resulted in a death, standing alone, is not enough to warrant a finding that confinement is necessary to avoid depreciating the seriousness of the offense. See State v. Butler, 880 S.W.2d 395, 400-401 (Tenn. Crim. App. 1994); State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995). However, a court may deny probation based solely upon the circumstances surrounding the offense if the offense is "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated

14

degree." State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991).

The state contends that the offense was especially violent, horrifying, shocking, reprehensible, offensive, and to an excessive or exaggerated degree. It asserts that the defendant stabbed an unarmed person "in a senseless altercation, with little apparent provocation," stating that the defendant was thirty to forty pounds heavier than the victim and essentially instigated the fight. However, we do not believe the record supports a conclusion that the defendant was the aggressor. On the other hand, the circumstances of the offense should not be taken lightly.

Our supreme court, as well as this court, looks with disfavor at defendants who choose to mix deadly weapons or instruments with alcohol. See State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985); Butler, 880 S.W.2d at 401. We believe that doing so in the environment of a public drinking establishment is of particular concern given the heightened risk of physical altercations that exists in such a setting. See, e.g., State v. Bobby Joe Russell, No. 03C01-9608-CR-00319, Polk County (Tenn. Crim. App. Sept. 17, 1997), app. denied (Tenn. April 27, 1998). Moreover, the fact that the evidence does not show that the defendant was under the influence of alcohol is of little consequence because it does show that the victim was under the influence. In the present case, although the defendant's knife can legitimately be called a pocket knife, albeit a large one, it is no less a deadly weapon, particularly as it was used by him.

The defendant told the trial court that he was afraid and did what he thought was appropriate to stop the victim's attack. We question whether the defendant has fully accepted responsibility for his actions. The evidence reflects that the defendant weighed one hundred eighty-five pounds while the victim weighed one hundred fifty pounds. Given the internal injuries suffered by the victim and the size of

15

the defendant's knife, it is apparent that the defendant stabbed the victim with great force. This belies any indication that the defendant may have been acting defensively. Even if the victim was the aggressor, the circumstances do not justify the use of a deadly weapon.

We are aware that this court has stated that the "fact that a death occurred or that a firearm was employed in the commission of the offense are not sufficient, without more, to justify a sentence of total confinement." State v. Louis Lavergne, No. 01C01-9803-CR-00128, Davidson County (Tenn. Crim. App. July 8, 1999). However, the circumstances surrounding the offense in the present case are more serious than just the use of a weapon. We conclude that the record supports the denial of probation in order to avoid depreciating the seriousness of the offense as committed by the defendant.

In consideration of the foregoing and the record as a whole, the defendant's sentence is modified to three years and six months imprisonment to be served in the custody of the Department of Correction.

_____
Joseph M. Tipton, Judge

CONCUR:


_____
Gary R. Wade, Presiding Judge


_____
William M. Barker, Special Judge

16