IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 12, 2003 Session

## STATE OF TENNESSEE v. SHANI CARR

**Appeal from the Circuit Court for Coffee County**
**No. 31,485F     John W. Rollins, Judge**

---

### No. M2002-02261-CCA-R3-CD - Filed March 11, 2003

---

The defendant, Shani Carr, appeals as of right from her three-year jail sentence imposed by the Coffee County Circuit Court following her guilty plea to manufacturing methamphetamine, a Class C felony. She contends that the trial court should not have sentenced her to incarceration based upon the need for deterrence because the record is devoid of proof for such need. We agree, reverse the trial court's sentence of incarceration, and sentence the defendant to split confinement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Eric J. Burch, Manchester, Tennessee, for the appellant, Shani Carr.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Charles Michael Layne, District Attorney General; and Kenneth J. Shelton, Jr., Deputy District Attorney General, for the appellee, State of Tennessee.

### OPINION

On September 10, 2001, drug task force agents went to talk to the defendant and her husband, Lewis Wayne Carr, at their house in Normandy, Tennessee. When no one came to the door, the agents walked toward the barn and noticed a burn pile containing bags of iodine-stained filters, tubing, and boxes of antihistamines. One agent obtained a search warrant and returned to the defendant's house where the law enforcement team entered by force. The agents found the defendant hiding in a closet with a "crank pipe" on the floor beneath her. A search of the property revealed chemicals and equipment used in manufacturing methamphetamine. The defendant pled guilty to manufacturing methamphetamine in Case No. 31,485F.

At the submission hearing, the defendant also pled guilty in Case No. 31,072F to possession of drug paraphernalia with intent to manufacture a controlled substance, a Class E felony, stemming from an earlier search of her home. On June 28, 2000, she fled with her nine-year-old daughter on a four-wheeled all terrain vehicle when officers arrived to execute a search warrant. The search revealed a purple duffle bag containing chemicals and equipment used for manufacturing methamphetamine. The defendant later admitted that she had found the duffel bag in her daughter's playhouse and had moved it to the dog house. The defendant's husband told officers that the duffel bag belonged to Keith Farrar and that he had allowed Mr. Farrar to "gas off" some methamphetamine the previous night. The defendant does not appeal her conviction or one-year sentence in Case No. 31,072F.

At the sentencing hearing, the defendant testified that she had an eleven-year-old daughter and was in the process of divorcing her husband. She said that although she was not actively involved in the manufacturing of drugs, she was aware of what was going on in her home and used drugs. She said she had no prior criminal record and had been employed periodically over the last ten years. She said she was promised a job at Cracker Barrel restaurant upon her release from jail and intended to live with her mother and daughter. She said she had been in jail for eighty-seven days and had thought about what she had done. She said she had concluded that drugs are not worth it and that making a good life for her daughter was the most important thing to her now.

On cross-examination, the defendant admitted that she had written a number of worthless checks and had been allowed to pay them off without being convicted. She explained that she did not know the checks were worthless and had written them before she was fired from her job at Bridgestone but did not have the money to cover them by the time they were cashed. She said she had never participated in cooking methamphetamine and did not know how often it was produced at her house. She acknowledged that her daughter was living in her house at the time the drugs were manufactured but stated that she would take her daughter elsewhere whenever this was taking place.

Laura Prosser, who prepared the defendant's presentence report, testified that the defendant had no previous convictions. She said the defendant had been arrested before but the resulting charges were all dismissed or retired. She said the defendant admitted using drugs since 1992. She said the defendant reported that her husband had abused her physically and mentally for the last five years. She said the defendant had worked for Tennessee Apparel from 1991 to 1992, for Bridgestone from 1992 to 1999, and for Design Build Commercial Construction from March to October 2001. She said the defendant had been fired from her position at Bridgestone. On cross-examination, she agreed that the defendant did not say that her husband had coerced her participation in the crimes to which she pled guilty.

Brenda K. Turner, the defendant's next-door neighbor, testified that the defendant was a good friend of her family and had lived next to Ms. Turner's mother for twelve years. She said that the defendant had a tumultuous marriage and that the defendant's husband yelled and threatened the defendant a lot. She said that the defendant and her daughter had fled in fear to Ms. Turner's home to escape the defendant's husband and that the defendant's family did not support her much. She

said the defendant was devoted to her daughter and had worked for most of the six years that Ms. Turner had known her.

The presentence report reveals that the thirty-seven-year-old defendant attended high school through the eleventh grade. The defendant reported suffering from depression and using about one gram of methamphetamine per month. In addition to the employment history given by Ms. Prosser, the defendant reported working for Dawn Ray Casual, but this could not be verified because the business had closed. The report reflects that the defendant had the following arrests: On May 10, 1996, for speeding; on January 25, 1999, for passing worthless checks in an amount up to $100; on June 18, 1999, for passing worthless checks in an amount up to $100; on November 17, 2000, for theft of property valued up to $500; and on May 7, 2001, for theft of property valued up to $500.

The trial court found that no enhancing or mitigating factors were present and sentenced the defendant as a Range I, standard offender to three years for manufacturing methamphetamine and to a year for possession of drug paraphernalia with intent to manufacture a controlled substance, to be served concurrently. It found confinement necessary to avoid depreciating the seriousness of the offenses and particularly suited to deter others prone to commit this kind of offense.

The defendant challenges the denial of an alternative sentence, contending that the trial court's findings on deterrence are not supported by proof in the record. The state contends that the defendant was properly sentenced to incarceration based upon the need for deterrence and the defendant's history of criminal conduct. We agree with the defendant that the record is insufficient to support a finding of need for deterrence.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. §§ 40-35-401(d), -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on her own behalf and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986).

As a Range I, standard offender convicted of Class C and E felonies, the defendant is presumed to be a favorable candidate for a sentence other than confinement. See Tenn. Code Ann. § 40-35-102(5)-(6). When determining if incarceration is appropriate, the trial court should consider that (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing Tenn. Code Ann. § 40-35-103(1)(A)-(C)). Additionally, the trial court should consider a defendant's potential or lack of potential for rehabilitation. Tenn. Code Ann. § 40-35-103(5).

The trial court sentenced the defendant to confinement based upon the second consideration, the need to avoid depreciating the seriousness of the offense and the particular suitability of confinement to deter others likely to commit similar offenses. With regard to a sentence of confinement based upon the need for deterrence, our supreme court has held that

> the trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need. Accordingly, we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

State v. Hooper, 29 S.W.3d 1, 10 (Tenn. 2000). In this respect, the court suggested five non-exclusive factors that reveal "whether a need for deterrence is present and whether incarceration is 'particularly suited' to achieve that goal:"

> 1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
> . . . .
> 2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.
> . . . .
> 3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.
> . . . .

4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.
. . . .
5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.

Id. at 10-12 (emphasis omitted).  The court noted that these factors were meant as a guide and need not all be present before incarceration is deemed appropriate.  Id. at 12.

In its opening argument at the sentencing hearing, the state asked the trial court to take judicial notice of its docket and asserted that it showed that methamphetamine-related offenses were rampant in that judicial district.  At the conclusion of the sentencing hearing, the trial court stated the following:

I've been on the bench for 11 years and was assistant district attorney for about 5 years, and I was a defense lawyer for about 17 years, and in the drug world, it seems like things go in cycles.  I think of all of the things I have seen, methamphetamine is–and drugs in that category–pose one of the greater threats to our society.

The defendant contends that this comment is based upon the trial judge's personal observations and is insufficient to establish an increasing presence of methamphetamine-related offenses in the community, jurisdiction, or state.

Although a judge may judicially notice some facts establishing a need for deterrence, the trial court's extrajudicial observations are not the proper basis for sentencing.  Hooper, 29 S.W.3d at 13; see Tenn. Code Ann. § 40-35-210(g) and Sentencing Commission Comments.  "A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Tenn. R. Evid. 201(b).  On the other hand, "a court may not consider facts outside the record that are within the judge's personal knowledge under the guise of taking judicial notice."  State v. Nunley, 22 S.W.3d 282, 288 (Tenn. Crim. App. 1999).

In the present case, the trial judge's observations that drug offenses are cyclical and that methamphetamine is one of the more dangerous drugs to society come from his personal knowledge, not just the court docket.  His observations are not generally known within Coffee County nor are they readily determined from some unquestionably accurate source.  Even if the trial court had relied solely upon his observations from the bench, general statements that drugs are a problem in a particular county "cannot serve as a substitute for factual findings containing comparisons to indicate increased drug use" in the county, requiring a need for deterrence.  State v. Fields, 40 S.W.3d 435,

442 (Tenn. 2001). We agree with the defendant that the record contains no evidence of a particular need to deter the manufacture of methamphetamine in the community, jurisdiction, or state as a whole.

In our de novo review, we also observe that the other four factors from Hooper do not support a need for deterrence, especially in the absence of factor one. With regard to factor two, our supreme court has noted:

> Actions that are the result of intentional, knowing, or reckless behavior or those motivated by a desire to profit from illegal activity are probably more deterrable than those which are not the result of a conscious effort to break the law. . . . . Common sense tells us that we may have less ability to deter crimes which are the result of provocation, sudden and extreme passion, or even negligent behavior, irrespective of whether others who commit similar crimes are incarcerated or given probation.

Hooper, 29 S.W.3d at 11. In the present case, the record is devoid of any evidence that the defendant sought financial profit from the manufacture of drugs in her home. The state argues that the defendant stood to gain from the production of drugs in her home through her personal use of the methamphetamine. We agree that the defendant did benefit from the manufacture of methamphetamine in this way. Nevertheless, in view of the surrounding circumstances in this case, we believe this factor alone is insufficient to support the need for deterrence and the particular suitability of full incarceration in achieving that goal.

The record contains no evidence that the case received any publicity, the subject of factor three. With respect to factor four, that the defendant substantially encouraged or assisted others in a criminal enterprise, the state in oral argument before this court maintained that the defendant cannot plead guilty to manufacturing methamphetamine and then deny assisting others in manufacturing the drug. It also pointed to the defendant's moving the duffle bag containing drug paraphernalia to the dog house from her daughter's doll house as evidence of assistance. The record reflects that the defendant's involvement in the manufacturing of methamphetamine was limited to her awareness that it was occurring in her home. Although moving the duffle bag could suggest that the defendant was attempting to conceal evidence that drugs were being manufactured in her home, nothing in the record suggests that the dog house was a better hiding place than the doll house. We believe that the minimal evidence in support of factor four cannot be deemed substantial assistance under the circumstances of this case.

Finally, with regard to factor five, which relates to undetected or unprosecuted criminal conduct of the same type as the conviction, the record contains no evidence that the defendant has ever manufactured methamphetamine herself. The record does reflect that she was aware that methamphetamine was being manufactured in her home for some time. The limited portions of the record relating to the facts surrounding the offenses show that the defendant's husband was allowing

others to manufacture methamphetamine in the home he shared with the defendant and their daughter. Laura Prosser testified that the defendant had told her that the defendant's husband was physically and mentally abusive. Brenda Turner testified that defendant feared her husband. We believe that the evidence that the defendant's awareness that methamphetamine was being manufactured in her home is insufficient to show that her incarceration would rationally deter others who are likely to commit similar crimes and find themselves in a similar situation, particularly when viewed in the perspective of the defendant's abusive marriage. The evidence does not support a sentence of full incarceration based solely upon a need for deterrence.

The trial court also sentenced the defendant to full confinement in order to avoid depreciating the seriousness of the offense. See Tenn. Code Ann. § 40-35-103(1)(B). "For this provision to apply, the circumstances of the offense 'as committed, must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring probation.'" Fields, 40 S.W.3d at 441 (quoting State v. Cleavor, 691 S.W.2d 541, 543 (Tenn. 1985) (quoting State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981)), overruled on other grounds by Hooper, 29 S.W.3d at 9); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). In the present case, the trial court made no findings regarding the circumstances of the offense. Our de novo review of the record reveals that the sparse facts relating to the defendant's conviction for manufacturing methamphetamine were not particularly exaggerated or excessive. Thus, the circumstances of the offense do not overcome the presumption in favor of an alternative sentence.

On the other hand, the evidence does reveal that some confinement would be appropriate to emphasize to this defendant the seriousness of her actions. The proof reveals that although the defendant had no prior criminal convictions, she admitted using drugs for over ten years and reported using one gram of methamphetamine monthly. The two crimes to which the defendant pled guilty occurred over a year apart, which indicates a sustained intent to engage in criminal activity relating to methamphetamine. Although we do not believe that the record justifies a sentence of full confinement based upon the defendant's criminal history as suggested by the state, we believe that the defendant's criminal conduct justifies some confinement to avoid depreciating the seriousness of the offense and to impress upon the defendant the seriousness of her actions. See State v. Butler, 880 S.W.2d 395, 401 (Tenn. Crim. App. 1994) (holding that the circumstances of the offense did not justify a sentence of full confinement but did warrant some confinement to avoid depreciating the seriousness of the offense). To date, the defendant has served some eight months of her sentence in confinement. Any concern about the circumstances surrounding the offense reflecting a particular need for acknowledging the seriousness of the offense is more than fully met by the time the defendant has already served.

Based upon the foregoing and the record before us, we conclude that her three-year sentence shall be suspended upon time previously served and that the remainder of the time shall be served

on supervised probation with the conditions to be set by the trial court. The judgment of conviction is reversed, and the case is remanded to the trial court for entry of a new judgment consistent with this opinion.

_____
JOSEPH M. TIPTON, JUDGE