# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 25, 2001 Session

## STATE OF TENNESSEE v. JARED M. BARNES

**Appeal from the Circuit Court for Sevier County**
**No. 7974      Richard R. Vance, Judge**

---

**No. E2001-00325-CCA-R3-CD**
**December 10, 2001**

---

The defendant, Jared M. Barnes, was convicted upon his guilty plea for vehicular homicide by recklessness, a Class C felony. The trial court sentenced him as a Range I, standard offender to five years, with ten months, day for day, to be served in the county jail and the remainder of the sentence to be served on probation.  In addition, the trial court suspended the defendant's driving privileges for five years and ordered that he complete five hundred hours of community service.  The defendant appeals his sentence, contending that the trial court erred in denying him judicial diversion or full probation.  We affirm the trial court's denial of judicial diversion and full probation, but hold that the order that the defendant serve his ten-month incarceration day for day does not preclude use of applicable conduct credits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

James H. Ripley, Sevierville, Tennessee, for the appellant, Jared M. Barnes.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Charles E. Atchley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pled guilty pursuant to a plea bargain by which the sentence was to be five years, with confinement of no more than a year, the exact amount, if any, to be set by the trial court. At the defendant's guilty plea hearing, the state presented the following factual account of the crime: On August 20, 1999, the defendant and three passengers were traveling in Sevier County, when they were involved in a one-car accident.  One of the defendant's passengers, Sammy Garner, was killed. The Tennessee Highway Patrol determined that the defendant had been driving, and the defendant admitted to officers that he had been drinking.   A blood test revealed that the defendant's blood

alcohol content was .10%. The defendant's blood also tested positive for Diazepam, a generic name for Valium.

The defendant was indicted for vehicular homicide by intoxication, a Class B felony. See Tenn. Code Ann. § 39-13-213(a)(2), (b). He pled guilty to vehicular homicide by recklessness, a Class C felony. See Tenn. Code Ann. § 39-13-213(a)(1), (b). As part of the plea agreement, the defendant was to receive a five-year sentence, with maximum incarceration not to exceed one year.

At the sentencing hearing, the then twenty-two-year-old defendant testified that he was a high school graduate and lived with his parents. He said that he did maintenance for his parents' business, Christmas Place, in Pigeon Forge. He said that he took medications for attention deficit disorder (ADD) and depression. He said that on the night of the accident, he attended a party at a friend's house. He said that he and three friends left the party and went to Patriot Park to meet people. He said that he was driving, the victim was in the front passenger seat, and his two other passengers were in the back seat. He said that after they met people at Patriot Park, they headed back to the party. He said that he was leading people to the party and that he was constantly looking in his rearview mirror to make sure that the car behind him did not get lost.

The defendant testified that he was driving on a narrow, curvy road that did not have street lights. He said that there was no guardrail or shoulder on the road. He said that he and the victim were trying to find a music compact disc (CD) to play and that the victim dropped one of the CDs. He said that as he bent down to pick up the CD, the car's right front tire left the pavement and that before he could pull the car back onto the road, it rolled down an embankment. He said that the first thing he did was make sure that everyone was alright. He said that he did not hear anything from the victim and that he saw that the victim was not breathing. He said that he gave the victim cardiopulmonary resuscitation (CPR) and that he had the victim's blood all over his shirt. He said that everyone but the victim walked away from the accident.

The defendant testified that he took Valium the night of the accident and that he was "legally drunk" at the time of the wreck. He said that everyone in the car had been drinking "tremendously" and that he took responsibility for the accident "one hundred percent." He said that he wanted to talk to kids in the community about his mistake. He said that the victim was his best friend and that he wished he could switch places with the victim. He said that he will never drink and drive again.

On cross-examination, the defendant acknowledged that he started drinking and taking drugs when he was nineteen. He said that he has smoked marijuana a couple of times but that at the time of the sentencing hearing, he had not smoked marijuana for two years. He said that before the accident, he would occasionally drink with friends and get drunk. He said that on the night of the accident, he drank about six beers. He said that the night of the accident was the first time that he had taken Valium. He said that since the accident, he rarely drank alcohol and that he has had only "a sip or two." He said that after the wreck, an officer told him that it was a freak accident. He said that the officer also gave him field sobriety tests and that he passed them. He said that he has visited the victim's grave six times.

The defendant's mother, Karen Barnes, testified as follows: She had a close relationship with the defendant. The defendant was a difficult child to raise, and a doctor diagnosed him with ADD when the defendant was fourteen years old. Because the defendant was having a difficult time in school, she sent him to a special school in Utah, where he could get help and earn his diploma. The defendant probably tried alcohol and drugs after he graduated from high school. The defendant was very sorry for what happened, and he told her that he wished he had gotten killed instead of the victim. After the accident, the defendant did not leave the house for a couple of months, and he would not talk on the telephone. He was working at Christmas Place and was a very hard worker. The defendant had a soft heart and liked to talk to people. The principal of a local middle school was receptive to the defendant's working in the school system, and Ms. Barnes thought that the defendant could benefit the community by sharing his experience with kids. On cross-examination, Ms. Barnes acknowledged that her son had two or three speeding tickets.

Toby Barnes, the defendant's father, testified as follows: After the defendant graduated from high school, the defendant worked for a family friend in China and Japan. When the defendant returned from Japan, he began working at Christmas Place. Before the accident, the defendant's life consisted of working and socializing with friends. The defendant also got some speeding tickets. Since the accident, the defendant had matured and become a diligent worker. He had also begun attending church. The defendant showed remorse and felt responsible for the victim's death. Mr. Barnes was committed to helping his son and would provide transportation so that the defendant could do community service work.

Betty Ogle, a friend of the Barnes family, testified as follows: She had known the defendant about sixteen years. The defendant had been loving, kind, and gentle, and he had been doing volunteer work at the Church of God Home for Children. She said that when her husband died in 1994, the defendant visited and comforted her. She said that the defendant and society would best be served by allowing him to perform community service work.

Steve Madison, a Barnes family friend, testified as follows: He was best friends with Toby Barnes, and Mr. Madison's son and the defendant were friends. The defendant had always been "a little rough around the edges," but the defendant had a big heart. Since the accident, the defendant had changed and had learned not to drink and drive. The defendant had lived with the accident everyday and had made some positive changes to his environment. Sending the defendant to jail would harden the defendant's heart, and society would be better off by allowing him to contribute to the community.

Nancy White, the victim's mother, testified as follows: Ms. White and the victim's father were divorced. Although the victim lived with his father, he spent weekends, holidays, and summers with Ms. White. The victim was happy and loving, and when he died, a part of her died with him. Ms. White and the victim loved to go fishing. However, Ms. White had not picked up a fishing pole since the victim's death. After the victim's death, Ms. White tried to commit suicide, and she had been depressed and cried all of the time. The victim's death caused Ms. White to hate the holidays,

and it tore her family apart. She agreed with the state's recommendation that the defendant should serve one year in jail.

The victim's father, Jerry Garner, testified as follows: The victim had lived with Mr. Garner since the victim was six years old. Mr. Garner had a good relationship with the victim, and the victim helped him with his business. Mr. Garner was married when the victim was killed, but the victim's death turned his life upside down and broke up his marriage. Mr. Garner will never be the same, and he was on medication for depression. He did not want the defendant's conviction to be expunged from the defendant's record.

According to the presentence report, between November 1995 and February 1997, the defendant received four misdemeanor convictions for speeding. In the report, the defendant stated that he was driving fifteen to twenty miles per hour at the time of the accident in question. The presentence report also provides that "the defendant appears to be a medium risk candidate for probation."

At the sentencing hearing, the state argued that, as part of his five-year sentence, the defendant should spend one year, day for day, in jail; that he should have to perform five hundred hours of community service; and that his driver's license should be revoked for five years. The defense argued that the defendant should receive judicial diversion and that his driver's license should be revoked for only three years.

The trial court sentenced the defendant to five years with ten months to be served in jail, day for day, and the balance to be served on probation. The trial court also ordered that the defendant perform five hundred hours of community service and revoked his driving privileges for five years. In deciding against judicial diversion and full probation, the trial court stated:

> Ladies and gentlemen, the Court has been considering the sentencing issues in #7974, State vs. Jared M. Barnes. This case is a tragedy; it's a tragedy for everyone concerned. It's a great tragedy for the young man, Sammy Garner. It's a great tragedy for his family. It's a tragedy for this defendant Jared Barnes who caused the death of his friend. It's a tragedy for his family and it's a tragedy for the community, the loss of a promising young man who was well liked. As pointed out in the testimony of everyone, it changed lives.
>
> Sentencing in a criminal case is a matter of law. And the sentence to be applied has to be carried out adhering to the principles and statutes which govern sentences. Nothing the Court can do can bring back a loved one. Nothing the Court can do can undo the crime committed by this defendant.
>
> . . . .

In reaching the sentencing decision the Court has considered the facts and circumstances of the case, not only as presented in the stipulated facts supporting the plea but also as set forth in this hearing today. The Court's considered the Pre-Sentence Investigation, the testimony of the defendant, the testimony of the victim's family, the testimony of several witnesses, considered his criminal record and all the circumstances in the case.

The sentencing law focuses primarily upon the defendant, the circumstances of his crime, the particular facts and factors that affect him primarily. The law does recognize the impact of a crime upon the family of the victim. It isn't a balance between the life and merits of the defendant and the victim but it's a matter of law.

. . . .

I will point out that certain enhancing factors would have applied; that is, his previous history of criminal behavior, the use of alcohol and drugs in this event since the offense pled to did not have alcohol and drugs as an element of the offense.

In mitigation the defendant has shown remorse. The defendant has shown that he suffered from Attention Deficit disability as a child but the proof further shows that he's performing and functioning very well in society now.

. . . .

Having agreed to the sentence of five years the Court must then consider by law various elements of that sentence. First of all is alternative sentencing. That has already been applied by the parties agreeing to a split confinement with a maximum of one year in jail.

The Court must next consider how that five year sentence should be served, that portion that the parties have agreed would be not more than one year. That issue is probation, whether or not he should be placed on straight probation or be ordered to serve a portion or all of that agreed sentence.

In looking at probation the Court must consider the nature and circumstances of the offense, this defendant. In this particular case probation would not be appropriate. This was a very serious offense. It took the life of the victim. That's inherent in the offense itself. But

to avoid depreciating the seriousness of that offense the Court feels that probation, straight probation would not be appropriate in this case.

The Court further considers in denying probation his previous history of criminal conduct. As shown in this hearing he had four previous convictions for misdemeanors, speeding, which normally in and of itself do not seem like serious offenses but they're violations of the law. The standards of society that's a crime. And he had four of those.

The proof further showed by his own admission that he had illegally used marijuana on at least two previous occasions. The illegal use of marijuana is a Class A Misdemeanor. It's a crime to use marijuana.

In considering the facts and circumstances of this offense the Court also is aware by the proof that there were two other passengers in the vehicle. Fortunately they were not hurt. There were two others who ran the risk of serious bodily injury or death by reason of this defendant's conduct.

It was finally argued in a different approach normally deterrence is a factor to be applied for imposing penalty and there are certain requirements of the law in order to support a finding of deterrence. In this case the defense argued deterrence by virtue of this defendant's voluntarily speaking out to school groups and others about what had happened in this case, the effect it had on him, the life of his friend as a deterrence to others. The State has argued that it would be of little deterrence for someone who has committed a crime that resulted in a death to not be punished.

The Court finds that in this case straight probation is not appropriate for the reasons I've given. The Court finds that based upon what he has done, in addition to his remorse, in addition to all the other facts and circumstances, he's already begun by talking to students, by sharing with them this tragedy and that's worth some credit.

The Court is going to order that this defendant serve ten months in the Sevier County Jail day per day.

The next issue the Court must consider is the application for judicial deferral. Consideration of this looks at many of the same factors as would be looked at on the issue of probation. . . .

Again, he had four previous convictions for Misdemeanors. That doesn't disqualify him. He did have a history of illegal use of drugs. That doesn't disqualify him under the statute. But those previous criminal offenses coupled with the seriousness of the offense and to avoid depreciating the seriousness of this offense, leaves the Court to conclude that judicial deferral would not be appropriate in this case. So the conviction would stand.

. . . .

The Court will further order as a condition of probation that he perform one hundred hours of public service per year of this sentence; one hundred hours to be completed in each year for a total of five hundred hours. How that public service will be performed will be done through the supervision of the Probation Department. It is suggested and proposed that he would do that by way of educational presentations to youth and that is desirable. The Court would ask that the Probation Office [emphasize] that as a part of his public service.

The Court believes that in doing that he will serve himself, he will serve the community. It may provide a deterrence as suggested but the fact that he will have served substantial time in jail and he may share that experience with his youthful audience will provide an even stronger deterrence. The Court feels that's necessary in this case.

## I. DENIAL OF JUDICIAL DIVERSION

The defendant contends that the trial court erred when it refused to grant his request for judicial diversion. He contends that when ruling on the judicial diversion issue, the trial court ignored factors that it was required to consider such as (1) the defendant's amenability to correction; (2) certain circumstances of the offense, including the physical characteristics of the road and the fact that the defendant was not speeding at the time of the offense; (3) the defendant's social history; (4) the defendant's mental health; and (5) serving the ends of justice. Furthermore, the defendant argues that because the state did not offer proof of a need for deterrence that would satisfy State v. Hooper, 29 S.W.3d 1 (Tenn. 2000), the trial court could not consider deterrence as a ground for denying judicial diversion. The state argues that the trial court considered all of the required factors and that

it properly denied judicial diversion. We conclude that the trial court did not err in denying diversion.

First, we question whether the defendant's plea agreement allowed for judicial diversion. The plea agreement called for the defendant to plead guilty and accept a five-year sentence, with the remaining consideration of the manner of serving the sentence being decided by the trial court. Under judicial diversion, the trial court defers further proceedings without entering a judgment of conviction, the ultimate goal of the defendant being a dismissal of the charges. See Tenn. Code Ann. § 40-35-313(a). The imposition of a sentence necessarily entails the entry of a judgment of conviction. Thus, agreeing to a sentence would foreclose the option of judicial diversion. In any event, because the state and the trial court considered diversion, we will review the trial court's decision.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See Tenn. Code Ann. § 40-35-313(a)(1)(B). As previously noted, judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. Tenn. Code Ann. § 40-35-313(a)(1)(B). When the probationary period expires, if the defendant has completed probation successfully, then the trial court will discharge the defendant and dismiss the proceedings against him with no adjudication of guilt. See § 40-35-313(a)(2). The defendant may then apply to have all records of the proceedings expunged from his official records. See § 40-35-313(b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See § 40-35-313(a)(1)(A).

Judicial diversion is not a sentencing alternative for a defendant convicted of an offense. See Tenn. Code Ann. § 40-35-104(c). Therefore, there is no presumption that a defendant is a favorable candidate for judicial diversion. See State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). When a defendant challenges the manner of serving a sentence, this court conducts a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). However, when the accused challenges the trial court's denial of a request for judicial diversion, a different standard of appellate review applies. Because the decision to grant judicial diversion lies within the sound discretion of the trial court, this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993).

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); Bonestel, 871 S.W.2d at 168. In addition, "the record must reflect that the court

has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." Parker, 932 S.W.2d at 958-59. If the trial court "based its determination on only some of the factors, it must explain why these factors outweigh the others." Electroplating, 990 S.W.2d at 229.

The record reflects that in denying the defendant's request for judicial diversion, the trial court considered the required factors. Although the trial court did not address the factors in sequential order, over the course of explaining the defendant's sentence, the trial court addressed all of the factors. The trial court concluded that the circumstances of the offense and the defendant's criminal history were factors that weighed against granting his request for judicial diversion. As for the defendant's contention that the trial court could not consider deterrence as a factor, we note that the trial court found that the circumstances of the offense and the defendant's criminal history alone outweighed all of the other factors. Even if we assume that the trial court improperly considered the deterrence factor, such error would not have changed the trial court's result in this case. Therefore, in light of the record before us, we do not believe that the trial court erred in denying the defendant's request for judicial diversion.

## II.  DENIAL OF FULL PROBATION

Next, the defendant contends that the trial court erred in denying him full probation because the trial court considered inappropriate factors and failed to follow the Criminal Sentencing Reform Act of 1989. The defendant contends that the mere fact that a death resulted from the offense is not sufficient to overcome the presumption afforded him by Tenn. Code Ann. § 40-35-102(6) as a Range I, Class C felon that he is a candidate for a sentence alternative to confinement so as to justify denying him probation. In addition, he argues that the trial court improperly concluded that his marijuana use and four speeding tickets created a criminal history sufficient to deny full probation. Furthermore, he argues that because the trial court applied inappropriate factors, the trial court's ruling is not entitled to a presumption of correctness. The state argues that the trial court properly sentenced the defendant. We agree with the state.

As previously stated, appellate review of the manner in which a sentence is to be served is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S .W.2d 166, 169 (Tenn. 1991). A defendant seeking full probation bears the burden on appeal of showing that the sentence imposed is improper and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, and the need for deterrence. State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearings, (2) the presentence report, (3) the principles of

sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the need and potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103 and -210; Ashby, 823 S.W.2d at 169.

A Range I, standard offender, who has been convicted of a Class C, D, or E felony, is presumed to be a favorable candidate for a sentence other than confinement if there is no evidence to the contrary. See Tenn. Code Ann. § 40-35-102(5)-(6). However, confinement is appropriate when it is necessary to avoid depreciating the seriousness of the offense. See Tenn. Code Ann. § 40-35-103(1)(B). The "fact that the death of another results from the defendant's conduct does not, alone, make the offense sufficiently violent to justify a denial of probation nor can it be viewed as sufficient evidence to overcome § 40-35-102(6)." State v. Butler, 880 S.W.2d 395, 400-01 (Tenn. Crim. App. 1994).

We conclude that the trial court's findings as to the probation are entitled to a presumption of correctness because the record reflects that in denying probation, the trial court considered the relevant facts, circumstances, and sentencing principles in this case. Although the defendant is correct in that death of the victim alone is not sufficient justification for denying probation, the sentencing hearing transcript shows that the trial court considered many factors and determined that the facts and circumstances of the offense, the defendant's criminal history, and the need to avoid depreciating the seriousness of the offense warranted denying full probation. The evidence demonstrates that the trial court followed the requirements of the law and exercised solid judgment in its determination that the defendant should serve ten months of his sentence in confinement.

As for the defendant's contention that the trial court improperly considered his speeding tickets and prior marijuana use in denying full probation, we disagree. Moreover, we believe that the facts and circumstances of this case warrant denying full probation. The defendant admitted to driving a car while legally drunk and causing the victim's death. As pointed out by the trial court, the defendant put the lives of his two other passengers in jeopardy. Therefore, we hold that the defendant failed to show that the trial court's sentence of ten-months incarceration was improper.

We must note, though, that the trial court ordered the defendant to serve his ten-month confinement "day for day." A defendant sentenced to the county jail for less than one year is entitled to earn good conduct credits. See Tenn. Code Ann. § 41-2-111(b). This court has held that a trial court cannot deny a defendant this statutory right. See State v. James Kevin Underwood, E2000-09-1945-CCA-R3-CD, Washington County, slip op. at 5-6 (Tenn. Crim. App. Aug. 2, 2001) (holding that defendant sentenced to six months in jail, day for day, is entitled to earn good conduct credits); State v. Frank R. Clark, No. M2000-00862-CCA-R3-CD, Warren County, slip op. at 4 (Tenn. Crim. App. July 25, 2001), app. filed (Tenn. Sept. 13, 2001) (ordering driving under the influence sentence to be served in confinement at 100% cannot preclude applicable conduct credits). Therefore, the defendant's sentence of ten months confinement "day for day" does not operate to preclude applicable conduct credits.

In consideration of the foregoing and the record as a whole, we affirm the trial court's denial of judicial diversion and full probation.

_____
JOSEPH M. TIPTON, JUDGE