IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 12, 2002 Session

## STATE OF TENNESSEE v. CHRISTOPHER CHARLES HALL

**Direct Appeal from the Circuit Court for Rutherford County**
**No. F-48565     James K. Clayton, Jr., Judge**

_____

**No. M2001-00599-CCA-R3-CD - Filed Februray 24, 2003**

_____

The defendant pled nolo contendere to reckless homicide, a Class D felony.   The defendant contends the trial court erred in refusing to grant him full probation and sentencing him to two years of split confinement, with six (6) months to be served in the county jail and the remainder served on probation.   Due to the reckless nature of the killing, involving alcohol use simultaneous with the handling of weapons, we conclude the trial court did not erroneously sentence the defendant to a two-year sentence involving some form of confinement.  We affirm the defendant's sentence imposed by the trial court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Scott Daniel and Russ F. Eagle, Murfreesboro, Tennessee, for the appellant, Christopher Charles Hall.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General;  William C. Whitesell, Jr., District Attorney General; and Jennings A. Jones, Jr., and Thomas F. Jackson, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.


**OPINION**

        The defendant, Christopher Charles Hall, was indicted for voluntary manslaughter, a Class C felony, and public intoxication, a Class C misdemeanor.   The public intoxication charge was dismissed, and the defendant pled *nolo contendere* to reckless homicide, a Class D felony. Pursuant to his plea agreement, the defendant agreed to a sentence of two (2) years as a Range I standard offender, with the manner of service to be determined by the trial court.   After a sentencing hearing, the trial court ordered the defendant's sentence to be served in split confinement, with six (6) months in the county jail and the remainder of the sentence to be

served on probation. In this timely appeal, the defendant challenges the trial court's denial of full probation.

## I. Facts

The defendant presented the following testimony at the sentencing hearing, concerning the circumstances of the offense. The defendant and Mark Rigsby, the victim, had been friends prior to the instant offense. On the day of the offense, the defendant's aunt and uncle were leaving for a vacation in Florida, and the defendant had agreed to house-sit for them while they were gone. After leaving for work, he went to his uncle's house and worked on a friend's automobile. Later, the victim arrived, and the victim and the defendant drove to the defendant's house to get the defendant's gun. The defendant testified that he owned a full-sized .40 caliber pistol, which he usually kept loaded in his automobile. However, the defendant had wrecked his automobile, and therefore, the pistol was at his house. The defendant stated he felt uncomfortable about leaving an unattended gun in his home while house-sitting for his aunt and uncle. Therefore, the victim drove him to his home to get his pistol. The defendant placed his weapon under the passenger seat of the victim's car and did not intend to remove it until he arrived back at his uncle's home.

After they left the defendant's house, the victim drove to a house in Marshall County. While the victim was speaking with the occupants of the home, the defendant went behind a barn to use the bathroom. When he returned, the victim was in the car shouting at the occupants of the house. The defendant did not know what the dispute was about and did not see anyone with a weapon. However, a police report was admitted into evidence that indicated the victim had threatened the occupants of the house with a pistol. Apparently, the occupants of the house called the police after the victim and defendant left. There is no allegation in the report that the defendant made any threats or displayed a weapon, but the occupants did maintain that the victim had a .45 caliber pistol, as well as the defendant's .40 caliber pistol.

After the dispute in Marshall County, the victim and defendant drove to the Fox Camp Bar and Grill. While inside, both men consumed alcohol, and at some point the defendant told his ex-girlfriend, Melissa, that the victim had made a disparaging remark about her. Melissa apparently confronted the victim, and the victim became angry with the defendant for repeating his comments about Melissa. Although it is unclear from the record what was said, the victim conveyed to the defendant that he was angry and then walked out of the bar. A few minutes later, the defendant went outside and found the victim standing beside the passenger side of his car. The defendant was unaware that the victim had his pistol until the victim pulled it out and pressed it against the defendant's chest. The defendant responded by pulling out a one or two-inch pocketknife. At that point, another bar patron walked outside and observed the victim holding the gun to the defendant's chest and the defendant holding the knife. He instructed them to put the weapons away and come back inside the bar. Thereafter, both men simultaneously lowered the weapons. The victim placed the defendant's pistol in the back waistband of his pants and began to walk toward the bar. The defendant, hoping to prevent the victim from carrying the loaded weapon into the bar, tried to take the gun from the victim's waistband as he walked in front of the defendant. The victim realized what the defendant was doing and grabbed

the weapon first. A struggle over possession of the weapon ensued, and the victim was ultimately shot in his left cheek at contact range. The victim died as a result of the gunshot.

After the victim fell to the ground, the defendant stood there for a few moments, confused. At some point, he picked up the pistol and placed it in the bed of a pickup truck, which was parked beside the victim's body. The defendant was still standing there when the owner of the bar came outside and asked him why the victim was lying on the ground. The defendant replied that he fell down. The owner noticed the blood and told the defendant he should call 911. The defendant did and informed the operator that "a man shot himself" outside the bar. When the police arrived, the defendant told them where the gun was and that the victim shot himself while they were struggling over the gun. The police officer noticed that the defendant smelled of alcohol and charged him with public intoxication. Due to his intoxication, they waited until the next morning to question him about the shooting.

Over the next couple of days, the defendant voluntarily gave several statements concerning the circumstances of the shooting. In each of the statements, the defendant related the same basic facts concerning the events leading up to the shooting. However, the exact details concerning how the pistol discharged were slightly different. The defendant initially stated that the victim was holding the pistol in his right hand, and it discharged when the defendant grabbed the victim's right arm. Later, when informed by police that the autopsy established the bullet entered the left side of the victim's face and exited the right side, the defendant attempted to reconcile the medical evidence with his earlier statement. He stated that they were both holding onto the weapon and that he was pushing it back toward the left side of the victim's body when it discharged. The defendant then volunteered to take a polygraph test. After the polygraph test, the defendant added that he gained possession of the weapon during the struggle by reaching around the victim's head with his right hand and grabbing it from the victim's right hand. As the defendant was pulling the weapon back toward himself, the victim grabbed it and was trying to pull it away from the defendant when it discharged. Testimony by the victim's family revealed that the victim was actually left-handed. Notwithstanding the defendant's differing statements concerning how the gun discharged, he consistently maintained that the gun discharged during a struggle over possession of it and that he did not know who pulled the trigger. He further stated that he could not explain exactly how certain things happened, due to his highly excited and confused mental state during the struggle.

Detective Mark DiNardo testified that the defendant was very cooperative with the police from the beginning, including voluntarily continuing the polygraph test after his attorney arrived. He also acknowledged that the defendant told investigators that he was in a highly excited and confused state at the time of the shooting and could not explain why certain things happened. DiNardo testified that only one shot was fired from the defendant's pistol, and there were other rounds in the ammunition clip. He also noted that the spent shell casing did not eject from the pistol when it discharged the bullet that killed the victim. Detective DiNardo testified that the slide mechanism on the pistol needs to slide back in order "to eject a round." He explained that the force of the weapon being pressed against the victim's face could have prevented the slide mechanism from moving or someone's hand on the slide mechanism could have prevented it from moving.

A presentence report, admitted into evidence, indicated that the defendant was twenty-five years old at the time of the shooting, with no prior criminal convictions. He had graduated from high school and attended classes at a community college in Illinois. Prior to the sentencing hearing, the defendant had returned to his native state, Illinois, with the court's permission and was employed as a truck driver.

**Analysis**

The defendant challenges the manner in which he was ordered to serve his sentence. The trial court sentenced the defendant, as a Range I standard offender, to serve his two-year sentence in split confinement, six months to be served in the Tennessee Department of Correction and the remainder on probation. The defendant argues that he should have been granted full probation. The State contends that the record supports the decision of the trial court in denying full probation.

This Court reviews a defendant's challenge to the length or nature of his sentence de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered all relevant facts, circumstances, and principles of sentencing. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a de novo review, this Court considers the following factors: (1) the evidence, if any, received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristic of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann.§ 40-35-210. The defendant bears the burden of showing that his sentence is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments.

The defendant was sentenced to an alternative sentence of split confinement with six months of incarceration for his reckless homicide conviction, a Class D felony. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing. Tenn. Code Ann. § 40-35-102(6). However, the determination of whether a defendant is entitled to an alternative sentence and whether he is entitled to full probation requires two separate inquiries and burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Probation must automatically be considered by the trial court, but the defendant is not automatically entitled to probation as a matter of law. Tenn. Code Ann. 40-35-303(b), Sentencing Comm'n Comments; State v. Hartley, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). The defendant has the burden of establishing his suitability for full probation. Tenn. Code Ann. § 40-35-303(b). The defendant must show that probation will "subserve the ends of justice and the best interest of both the public and the defendant." State. v. Bingham, 910 S.W.2d 455, 456 (quoting State v. Dykes, 803 S.W.2d 250, 259 ) Tenn. Crim. App. 1990) *overruled on other grounds*, State v. Hooper, 29 S.W.3d 1, 8 (Tenn. 2000).

Reasons for the trial court's denial of probation included the defendant's lack of candor, history of handling guns while using alcohol, and because of the seriousness of the offense. Specifically, the trial court stated:

> I would have felt a whole lot better about [the defendant] had he rushed in and tried to call 911 immediately after it happened without all the different stories. Now, I understand people sometimes do things that they don't, after they've had a chance to sit down and do the right thing by that. But I feel like [the defendant] was trying to do everything he could to cover his actions in this case prior to finally coming clean after the lie detector test.
>
> . . .
>
> But the truth of the matter is, if [the defendant] were not carrying the pistol routinely, we wouldn't have had the homicide.

The defendant contends that the trial court erred in denying him full probation "because of the seriousness of the offense." The defendant is correct that the death of another, resulting from the defendant's conduct does not, alone, make the offense sufficiently violent to justify a denial of probation, nor can it be viewed as sufficient evidence to overcome the presumption in Tennessee Code Annotated section 40-35-102(6). State v. Butler, 880 S.W.2d 395, 400-01 (Tenn. Crim. App. 1994). From the record, we glean that the trial court applied additional factors in determining the defendant's sentence. We conclude the trial court did not abuse its discretion.

The record illustrates the defendant's reckless conduct of placing a loaded weapon in the car and his willingness to combine intoxicants with a dangerous instrumentality. Because the defendant failed to see the danger in attempting to take a weapon from the victim, a deadly struggle ensued and the victim was killed.

In addition, we agree with the trial court's finding that the defendant "was trying to do everything he could to cover his actions in this case prior to finally coming clean after the lie detector test." The defendant's inability to relate the exact details of the shooting to investigators is indicative of an intent to avoid responsibility for the death of his friend. The record indicates discrepancies in the defendant's statements regarding details of exactly how the weapon discharged.

As previously indicated, the defendant maintains the burden of establishing that the trial court imposed a proper sentence. We recognize that there are factors which weigh in the defendant's favor for probation. The defendant holds a full-time job and has no prior criminal convictions. Additionally, his testimony at the sentencing hearing was emotional and demonstrated his remorse for the crime. We conclude that there is sufficient evidence in the record to rebut the defendant's argument for full probation. The defendant has failed to carry his burden. The facts and circumstances of this case are sufficient to deny a grant of total probation.

**Conclusion**

For the aforementioned reasons, we affirm the judgment of the trial court.

_____

JOHN EVERETT WILLIAMS, JUDGE