# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 28, 2003 Session

## STATE OF TENNESSEE v. MATTHEW STALCUP

### Appeal from the Criminal Court for Union County
### No. 2171     E. Shayne Sexton, Judge

### No. E2003-00481-CCA-R3-CD
### April 23, 2004

The defendant, Matthew Stalcup, pled guilty in the Union County Criminal Court to reckless vehicular homicide, a Class C felony, and driving under the influence (DUI), a Class A misdemeanor. Pursuant to the plea agreement, the trial court sentenced him to eleven months, twenty-nine days at seventy-five percent for the DUI conviction and prohibited him from driving for one year. After a sentencing hearing for the reckless vehicular homicide conviction, the trial court sentenced him to five years to be served as one year in jail and the remainder suspended upon his serving ten years on supervised probation. The trial court also prohibited him from driving for ten years, ordered that the five-year sentence be served consecutively to the eleven-month, twenty-nine-day sentence, and ordered that the ten-year driving prohibition be served concurrently to the one-year prohibition. The defendant appeals his sentence for reckless vehicular homicide, claiming (1) that the trial court erred by denying his request for judicial diversion, (2) that the trial court erred by denying his request for full probation, (3) that the trial court improperly weighed enhancement and mitigating factors, (4) that the trial court erred by ordering that he serve the five-year sentence consecutively to the eleven-month, twenty-nine-day sentence, and (5) that the trial court's prohibiting him from driving for ten years is excessive. We affirm the sentence, except we conclude that the defendant should be prohibited from driving for five years.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Donald A. Bosch and Lisa B. Morton, Knoxville, Tennessee, for the appellant, Matthew Stalcup.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William Paul Phillips, District Attorney General; and John W. Galloway, Jr., Deputy District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a car wreck that resulted in Melba Shoffner's death. At the guilty plea hearing, the state relied on evidence presented at an earlier pretrial hearing. A transcript of the pretrial hearing reveals that on July 1, 2001, the defendant was driving south in the northbound lane on Highway 33 in Union County. The defendant's car hit the victim's car, which was traveling north. The victim died at the scene, and the defendant suffered multiple injuries. A police officer investigating the crash smelled alcohol in the defendant's car, and the defendant told a paramedic that he had consumed six or seven beers. The defendant pled guilty to reckless vehicular homicide and DUI and, pursuant to the plea agreement, the trial court sentenced him for the DUI conviction to eleven months, twenty-nine days at seventy-five percent; ordered that he pay a three hundred fifty dollar fine and costs for the state's expert; and prohibited him from driving for one year. The defendant's sentence for the reckless vehicular homicide conviction was to be determined after a sentencing hearing.

At the sentencing hearing, Officer Mark Miller from the Bradley County Sheriff's Department testified that on November 13, 1997, he received a dispatch about a reckless driver on Interstate 75. When he arrived at the scene, he saw a car stopped in the grassy median. The defendant was sitting in the driver's seat and slumped over. Officer Miller opened the car door, put the car in park, and turned off the engine. He gave the defendant field sobriety tests and arrested him for DUI. On cross-examination, he said that the defendant was cooperative and that the charge against the defendant later was reduced to reckless driving.

The defendant testified that he was twenty-three years old, married, had a three-year-old son, and currently worked at Cendant Corporation as a hotel reservation and sales agent. He said he was a full-time student at Pellissippi State Technical Community College and had a B average. He said that on June 30, 2001, he played golf that morning and went to the lake with some friends about 5:30 p.m. He said that he drank six or seven beers and that he began driving home about midnight. He said he remembered driving on Maynardville Highway, turning right, and paramedics working on him. He said he suffered head injuries and a cut knee. He said that his father told him about the victim's death and that he felt horrible about it. He said that he had a hard time dealing with the fact that he caused the victim's death and that he was receiving counseling. He said that he had had an alcohol problem for three to four years and that he was going into a six-month inpatient treatment program at Discovery Place when he got out of jail. He said he took his son to daycare and needed judicial diversion in order to be with his son and finish his education. He said that he wanted to go to work in his father's insurance business and that a felony conviction could prevent him from obtaining a license to sell insurance. He apologized to the victim's family.

On cross-examination, the defendant acknowledged that he had been drinking on the night of November 13, 1997, but said he was not drunk when Officer Miller found his car stopped in the grassy median. He also acknowledged that he pled guilty to reckless driving in that case and that his father warned him he could have been convicted of DUI and lost his driver's license. He said he attended Hiwassee College on a basketball scholarship after high school but left the school after an

"off-campus drinking incident." He acknowledged drinking while under age and being arrested for disorderly conduct. He said that in July 1999, he completed a five-week outpatient alcohol treatment program at Peninsula Hospital. He said that before he attended the treatment program, the police were called to his home after he and his father got into an argument in which drinking was involved. He acknowledged that all of his legal and personal problems had involved alcohol. He said that he got married after the wreck, that he and his wife were separated, and that he had not consumed beer for three or four months.

Tom Gilbertson, a family therapist, testified that he had been counseling the defendant since the wreck and that he had met with the defendant about twenty-five times. He said that as a result of the wreck, the defendant was depressed and overwhelmed with feeling responsible for the crash. He said the defendant also felt guilty for what he had put his family through. He described the defendant as a late bloomer and not very focused but said the defendant had become more responsible as a result of the crash. He said that he believed the defendant would become a "pretty solid citizen" and that he would be surprised if the defendant was involved in any other alcohol-related incidents.

Bob Overton, the Program Coordinator for Discovery Place, testified that his facility uses a twelve-step recovery program to treat alcohol dependence and that patients stay at least thirty days. He acknowledged that the defendant completed a thirty-day program seven months before the victim's death and stated that the defendant could return for more treatment after serving his jail sentence. He said that he had designed a five-month program for the defendant and that the defendant could overcome his alcohol addiction. He said that the defendant wanted to remain sober but that the defendant would have to refrain from alcohol completely in order to recover.

Dan Stewart, the defendant's uncle, testified that the defendant is his only nephew and that they have a close relationship. He said the defendant was a little immature for his age but had matured since the wreck. He said the defendant had changed, was extremely remorseful, and had become more disciplined and responsible. He said that he had not seen any external evidence that the defendant was still struggling with an alcohol problem but that he believed the defendant struggled with alcohol internally. He said he had not seen any signs that the defendant drinks and drives. He said the defendant has a supportive family and is motivated to do well.

Mack Stalcup, the defendant's father, testified that the defendant lived with him and his wife. He said the defendant was quiet, kept his emotions inside, appeared to be in shock after the wreck, and did not want to talk to anyone about it. He said that the wreck had had a devastating impact on his family and that he was sorry for the victim's family. He said the defendant had matured and was a good father. He said he and the defendant had talked about the defendant's joining his insurance business and gradually taking it over. He said a felony on the defendant's criminal record could prevent the defendant from obtaining a license to sell insurance. On cross-examination, Mr. Stalcup testified that he did not know the defendant had a drinking problem for a long time because the defendant did not drink at home. He said that after the defendant started getting into trouble, the defendant got professional help. Carol Stalcup, the defendant's mother, testified that the defendant

probably started drinking in high school and that she hoped the defendant would continue to get treatment at Discovery Place. She said the defendant felt guilty and had struggled with depression since the wreck. She said the defendant has recognized that he has an alcohol problem and could become a productive citizen.

John Lasher, the Branch Executive for the Halls/Powell Boys and Girls Club, testified that the defendant worked at the club from October 2001 to April 2002 as a playground supervisor. The defendant was patient with the children, and they enjoyed being with him. The defendant was a good and dependable employee but could not work at the club after the wreck because he had been charged with a felony.

Jodie Black, the victim's daughter, testified that she did not believe the defendant should spend years in prison for his mistake. She said, though, that given the defendant's history, he should have to serve some time in confinement. She said the defendant had other options for a career besides selling insurance.

According to the defendant's presentence report, the defendant is receiving counseling for stress and depression and has completed two alcohol treatment programs. The report shows that in 1999, the defendant completed a five-week treatment program at Peninsula Hospital and that he completed a thirty-day program at Discovery Place in November 2000. In the report, the defendant stated that he began drinking alcohol when he was sixteen years old and that he began to have a drinking problem when he was eighteen. He described his physical health as excellent, his mental health as good, and denied using illegal drugs. The report shows that the defendant was convicted of reckless driving in 1997.

In sentencing the defendant, the trial court began by addressing the sentencing considerations in T.C.A. § 40-35-103(1), stating that the defendant did not have a long history of criminal conduct and that a period of confinement would not deter others in the community from these types of actions. See T.C.A. § 40-35-103(1)(A), (B). However, the trial court determined that the defendant's prior criminal history was sufficient for enhancement purposes, applying enhancement factor (2), that the defendant "has a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range." See T.C.A. § 40-35-114(2). The trial court mitigated the defendant's sentence based upon his remorse. See T.C.A. § 40-35-113(13). The trial court determined that the enhancement factor outweighed the mitigating factor and increased the defendant's sentence from the presumptive three years to five years. In deciding whether the defendant should serve any portion of the sentence in confinement, the trial court noted that the defendant had a good and supportive family. However, it also noted that he had had "several run-ins with the law and with social problems that arise from drinking." The trial court stated:

> The most troublesome part of this hearing is the fact that you engaged in drinking after you did what you did. . . . Number one, it does affect you obviously. You've had family run-ins, . . . you've had social problems that has resulted from your engaging in the use of

alcohol. . . . And second, you've had legal trouble, and you didn't quit drinking. And that is the most troublesome thing . . . forgetting for a moment that we've had a great tragedy here. . . . I will never believe that that - that coming to Court is such a great event that it will make you quit drinking. I would, however, think that having a wreck and killing someone would, and it hasn't. That, in my opinion, it dims your prospects for rehabilitation . . . . And I'm at a loss for resources on how I help you deal with that.

So, what I'm getting around to saying, is your request for judicial diversion in my opinion is inappropriate. . . . [The] seriousness of the offense cannot be the sole factor for this Court not granting you diversion. I agree. My sole factor is, I don't see it helping you. . . . I see where times have arisen where you could have changed your conduct but chose not to.

The trial court then considered whether the defendant should receive some type of alternative sentence. However, the trial court held that the defendant needed "to know that there are consequences for certain actions" because there were "certain times in your life where you could have corrected this yourself but didn't." The trial court ordered that the defendant serve one year of the five-year sentence in jail, to run consecutively to the eleven-month, twenty-nine-day sentence for DUI. It also determined that after completing the one-year sentence, the remainder of the five-year sentence would be served as ten years on supervised probation. Finally, the trial court prohibited the defendant from driving for ten years. The defendant raises several issues regarding his sentence.

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, the presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden is on the appealing party to show that the sentence is improper. T.C.A. § 40-35-401(d), Sentencing Commission Comments. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

# I. JUDICIAL DIVERSION

The defendant contends that the trial court erred by denying his request for judicial diversion. He contends that the trial court ignored factors that it was required to consider, such as his amenability to correction, the circumstances of the offense, his social history, and the deterrence value of incarceration, and that the trial court did not adequately state the reasons for denying diversion. He argues that he is entitled to diversion because he was truthful to the trial court, has a young son, is employed, attends college, and has a good chance at rehabilitation. The state argues that the trial court considered all of the required factors and that it properly denied judicial diversion. We conclude that the trial court did not err by denying diversion.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See T.C.A. § 40-35-313(a)(1)(B). Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. T.C.A. § 40-35-313(a)(1)(B). When the probationary period expires, if the defendant has completed probation successfully, then the trial court will discharge the defendant and dismiss the proceedings against him with no adjudication of guilt. See T.C.A. § 40-35-313(a)(2). The defendant may then apply to have all records of the proceedings expunged from his official records. See T.C.A. § 40-35-313(b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See T.C.A. § 40-35-313(a)(1)(A).

Judicial diversion is not a sentencing alternative for a defendant convicted of an offense. See T.C.A. § 40-35-104(c). Therefore, there is no presumption that a defendant is a favorable candidate for judicial diversion. See State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). When a defendant challenges the manner of serving a sentence, this court conducts a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). However, when the accused challenges the trial court's denial of a request for judicial diversion, a different standard of appellate review applies. Because the decision to grant judicial diversion lies within the sound discretion of the trial court, this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993).

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); Bonestel, 871 S.W.2d at 168. In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons

for its determinations." Parker, 932 S.W.2d at 958-59. If the trial court "based its determination on only some of the factors, it must explain why these factors outweigh the others." Electroplating, 990 S.W.2d at 229.

The record reflects that in denying the defendant's request for judicial diversion, the trial court considered the required factors. Although the trial court did not address the factors in sequential order, over the course of explaining the defendant's sentence, the trial court addressed all of the factors. In support of diversion, the trial court noted that the defendant lacked a lengthy criminal record, that he came from a good and supportive family, and that confinement would not deter others from committing the crime. However, in support of denying diversion, the trial court held that the defendant had had many family and social problems as a result of his drinking alcohol. The trial court characterized the wreck as a "great tragedy," indicating that it believed judicial diversion would not serve the ends of justice and that the circumstances of the offense justified denying diversion. Most telling, however, was the trial court's determining that the defendant had a low potential for rehabilitation and that the weight of that factor alone justified denying diversion. The trial court repeatedly referred to the fact that the defendant continued to drink alcohol despite years of family and social problems and despite causing the victim's death. We agree with the trial court's reasoning and do not believe that it erred by denying the defendant's request for judicial diversion.

We note that in the defendant's brief, he states that in denying diversion, the trial court failed to consider a Sentencing Memorandum that the defense filed as evidence. The memorandum describes the defendant's background and includes fifty-seven letters that friends and family wrote on his behalf. According to the defendant, there "is no indication that the court had read the submission, considered it in any way as to any factor, whether favorably or not." However, our review of the sentencing hearing transcript reveals that at the beginning of the sentencing hearing, the defense asked the trial court if it had read the Sentencing Memorandum and letters. The trial court stated, "I have cursorily, but . . . I want some time to go back through this." After the parties' closing arguments, the trial court stated that it wanted some time to consider the evidence because "this is not something that I can just pluck out of the air because it is a -- it is a difficult matter." After a recess, the hearing resumed, and the trial court stated that it had reviewed the facts and applied the facts to the law in reaching a determination as to the defendant's sentence. Although the trial court did not specifically refer to the memorandum and letters, we believe the record demonstrates that the trial court considered all of the evidence in denying the defendant's request for judicial diversion.

## II.  FULL PROBATION

Next, the defendant contends that the trial court erred by denying his request for full probation. He argues that although the trial court determined that confinement was necessary in order to avoid depreciating the seriousness of the offense, the trial court stated no specific reasons to justify that determination. He contends that the victim's death alone cannot justify applying this factor and that the factor was improperly applied because the facts of this case were not "especially

violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." State v. Travis, 622 S.W.2d 529, 534 (Tenn. 1981); State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991). In addition, he contends that the trial court failed to consider properly the factors set out in T.C.A. § 40-35-103, including his potential for rehabilitation, and that the trial court arbitrarily ordered that he serve ten years of supervised probation. The state argues that the trial court properly denied the defendant's request for full probation. We agree with the state.

When determining if incarceration is appropriate, a trial court should consider whether (1) confinement is needed to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is needed to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) less restrictive measures than confinement have frequently or recently been applied unsuccessfully to the defendant. Ashby, 823 S.W.2d at 169 (citing T.C.A. § 40-35-103(1)(A)-(C)). The trial court may also consider the mitigating and enhancing factors set forth in T.C.A. §§ 40-35-113 and -114. T.C.A. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). In addition, a trial court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. T.C.A. § 40-35-103(5); Boston, 938 S.W.2d at 438.

As previously stated, when a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d). However, this presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. Ashby, 823 S.W.2d at 169. A defendant seeking full probation bears the burden on appeal of showing that the sentence imposed is improper and that full probation will be in the best interest of the defendant and the public. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, and the need for deterrence. State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

The defendant is correct in that the death of the victim alone is not sufficient justification for denying probation. See State v. Butler, 880 S.W.2d 395, 400-01 (Tenn. Crim. App. 1994). However, our review of the sentencing hearing transcript shows that the trial court considered many other factors and determined that the facts and circumstances of the offense and the need to avoid depreciating the seriousness of the offense warranted denying full probation. Regarding the factors set out in T.C.A. § 40-35-103(1), the trial court stated that the defendant did not have a long history of criminal convictions and that confinement would not deter others. See T.C.A. § 40-35-103(1)(A), (B). The trial court did not address factor (C), that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." See T.C.A § 40-35-103(C). However, no evidence was presented to support this factor, and the trial court obviously did not consider it as a basis for denying the defendant's request for full probation.

As to the defendant's claim that the trial court "did not consider Mr. Stalcup's potential for rehabilitation or treatment as required by the statute," we find no merit to this statement. As described in the previous section, the trial court explained extensively why, despite Bob Overton's testimony to the contrary, it did not believe the defendant could overcome his alcohol addiction. The trial court determined that the defendant had a low potential for rehabilitation because he continued to drink despite his family and social problems and despite causing the victim's death. We note that the defendant had completed two alcohol treatment programs yet continued to drink. Given these circumstances, we believe the trial court properly denied full probation based upon a need to avoid depreciating the seriousness of the offense. We also conclude that even if the circumstances of the offense had not justified denying full probation, some confinement for this offense is appropriate to emphasize to this defendant the seriousness of his actions. See Butler, 880 S.W.2d at 401(holding that the circumstances of the offense did not justify a sentence of full confinement but did warrant some confinement to avoid depreciating the seriousness of the offense).

Regarding the defendant's claim that the trial court arbitrarily ordered that he serve ten years on supervised probation, the trial court obviously believed that in light of the defendant's repeated alcohol abuse and low potential for rehabilitation, ten years of supervised probation, in which he will be required to perform community service and undergo alcohol testing, is necessary in order to ensure that he refrains from alcohol use. The evidence demonstrates that the trial court followed the requirements of the law, exercised solid judgment in its determination, properly denied the defendant's request for full probation, and properly ordered that he serve the remainder of his five-year sentence as ten years on supervised probation.

### III. ENHANCEMENT AND MITIGATING FACTORS

The defendant contends that his sentence is excessive because the trial court failed to weigh the enhancement and mitigating factors properly. He also contends that the trial court's applying enhancement factor (2) is confusing in light of the fact that the trial court stated that the defendant did not have a long history of criminal conduct. The state contends that the trial court properly sentenced the defendant. We agree with the state.

The range of punishment for a Range I defendant convicted of a Class C felony is three to six years. T.C.A. § 40-35-112(a)(3). The sentence to be imposed for a Class C felony is presumptively the minimum in the range unless there are enhancement factors present. T.C.A. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors. T.C.A. § 40-35-210(d), (e). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. T.C.A. § 40-35-210, Sentencing Commission Comments; Moss, 727 S.W.2d at 237; see Ashby, 823 S.W.2d at 169.

After finding that enhancement factor (2) and mitigating factor (13) applied in this case, the trial court simply stated that the enhancement factor outweighed the mitigating factor and sentenced

the defendant to five years.  As stated above, as long as the trial court followed the sentencing purposes and principles, the weight to be afforded an existing factor is left to the trial court's discretion.  We believe the evidence justifies the trial court's assessment.  Although the trial court held that the defendant did not possess a long history of criminal conduct for purposes of denying alternative sentencing under T.C.A. § 40-35-103, given that the defendant had a prior conviction for misdemeanor reckless driving and admitted drinking while underage, the trial court's application of enhancement factor (2) to his sentence was proper.  We conclude that the defendant's sentence is not excessive.

## IV.  CONSECUTIVE SENTENCING

The defendant contends that the trial court erred by ordering consecutive sentencing pursuant to the plea agreement.  The state argues that consecutive sentencing was proper.  After reviewing the plea agreement and the guilty plea hearing transcript, we conclude that the defendant agreed to the possibility that the trial court could order consecutive sentencing.

The defendant's written plea agreement states as follows:

> The State is free to make any recommendation as to the [reckless vehicular homicide] sentence in Count 2, except the State agrees that if the Court orders the sentence in Count 2 to be served in the [TDOC], denying alternative sentencing, that the sentence in Count 2 be served concurrently with the sentence in Count 1.
>
> . . . .
>
> The defendant further agrees that if the Court places the defendant on probation or Community Corrections with no split confinement in the county jail, then the sentence on Count 2 shall be served consecutively to the DUI sentence; but that if split confinement on Count 2 is ordered in conjunction with alternative sentencing then the Court could either run that sentence and split confinement concurrently or consecutively with the sentence in Count 1.  In any event, the defendant would not object that a consecutive sentence was not authorized by [T.C.A.] §40-35-115.

(Emphasis added).  Furthermore, at the guilty plea hearing, the trial court stated as follows:

> And it appears that if the Court denies alternative sentencing that there's an agreement up front that any, any sentence served in the penitentiary would be, the eleven/twenty-nine (11/29) would run concurrent with that.

-10-

. . . .

　　The defendant further agrees that if the Court places the defendant on probation or corrections with no split confinement in the county jail that the sentence on Count Two will be served consecutive to the D.U.I. sentence.

　　But if split confinement of Count Two is ordered in conjunction with alternative sentencing, the Court would either run that sentence of split confinement concurrently or consecutively with the sentence in Count One.

. . . .

　　So, we're saying that alternative sentencing would, would possibly result in consecutive sentencing and the defendant would not object to that.

　　[Defense]: Well, if, if that's what the Court imposed, it would result in consecutive sentencing, by agreement.

This court has held that consecutive sentencing is subject to plea negotiations. See State v. Benjamin Christopher Ashworth, No. 03C01-9902-CC-00065, Blount County, slip op. at 3-4 (Tenn. Crim. App. Oct. 6, 1999); State v. Houston Grady Chapman, No. 01C01-9808-CC-00354, Maury County (Tenn. Crim. App. Dec. 11, 1998) (order); Patrick Williams v. State, No. 01C01-9506-CR-00190, Davidson County, slip op. at 9-10 (Tenn. Crim. App. May 9, 1996). We conclude that the trial court's ability to order consecutive sentencing upon a sentence of split confinement for the reckless vehicular homicide was a part of the defendant's plea agreement. The defendant cannot now complain about a sentence to which he had agreed as part of his plea bargain agreement with the state.

## V. DRIVING PRIVILEGES

Finally, the defendant contends that the trial court erred by prohibiting him from driving in this state for ten years, the maximum allowed by the vehicular homicide statute. Although he acknowledges that the trial court had the authority to prohibit him from driving, he contends that in comparing this case with other vehicular homicide cases, the facts of this case do not warrant such an extensive prohibition. The state does not address this issue. We agree that the ten-year prohibition is excessive.

The vehicular homicide statute requires the trial court to "prohibit a defendant convicted of vehicular homicide from driving a vehicle in this state for a period of time not less than three (3) years nor more than ten (10) years." T.C.A. § 39-13-213(c). The standard of review for a trial court's prohibiting a defendant from driving pursuant to the statute has never been stated specifically.

However, we note that T.C.A. § 55-10-403(a), the general DUI sentencing statute, also requires a trial court to prohibit a DUI offender from driving in this state for a certain period of time and indicates that it is one of the "penalties" for that offense. We conclude that a trial court's prohibiting a DUI defendant from driving is a punishment that is subject to de novo review with a presumption of correctness. See T.C.A. § 40-35-401(d). See, e.g., State v. Stanley, 729 S.W.2d 686, 689 (Tenn. Crim. App. 1987) (on petition to rehear) (holding that the issuance or non-issuance of a restricted operator's license under the DUI sentencing statute is a "sentencing issue" and, therefore, requires this court to review the issue pursuant to T.C.A. § 40-35-401(d)). Moreover, given that the DUI sentencing statute and the vehicular homicide statute both provide that a trial court "shall prohibit a defendant . . . from driving a vehicle in this state" for a certain period of time, we hold that review of a trial court's prohibiting a defendant from driving for a vehicular homicide conviction also is a sentencing issue that should be reviewed de novo with a presumption of correctness. In the present case, the trial court did not specify its reasons for prohibiting the defendant from driving for ten years, stating only that "his license will be revoked for a ten-year period, which is the maximum that the law would allow the Court to revoke a license based on this particular offense." Therefore, we will review this issue de novo with no presumption of correctness.

The defendant cites State v. Michael Eugene Knox, No. W2000-00362-CCA-R3-CD, Gibson County (Tenn. Crim. App. Dec. 27, 2000), in support of his claim. In that case, the defendant lost control of his car and crashed into an embankment, killing his passenger. After the wreck, the defendant dragged the passenger's body, which had been thrown over sixty feet from the car, back to the car and claimed that the passenger had been driving. The defendant, who had been drinking and smoking marijuana on the night of the wreck, later admitted that he had been the driver and pled guilty to Class B felony vehicular homicide. The trial court sentenced him to eight years in confinement but did not bar the defendant from driving. On appeal, the state asked this court to prohibit the defendant from driving for five years. This court stated that given the circumstances of the offense, a five-year prohibition was reasonable. Id., slip op. at 9.

In State v. Bingham, 910 S.W.2d 448, (Tenn. Crim. App. 1995), the defendant, who was under the legal drinking age, spent an evening drinking at a bar. While attempting to drive home, she hit another car head-on, killing the other driver, and pled guilty to reckless vehicular homicide. This court noted that the defendant was employed, had no criminal history, lived with her parents, and had an excellent reputation in her community and prohibited her from driving for three years. Id. at 452, 457.

In State v. Robert Glen Grissom, III, No. 02-C-01-9204-CC-00076, Henderson County (Tenn. Crim. App. Mar. 10, 1993), the defendant had a head-on collision in which the driver of the other car was killed. The defendant, who admitted drinking five beers on the night of the wreck, was convicted of reckless vehicular homicide and DUI. The trial court sentenced him to three years in confinement but did not prohibit him from driving as required by the vehicular homicide statute. In ordering that the defendant be prohibited from driving for five years, this court noted that the defendant's driving record showed that he had been charged with two earlier accidents, that he had been convicted of speeding twice, and that he was speeding at the time of the wreck in question. Id.,

slip op. at 16.  In State v. James C. Wolford, No. 03C01-9708-CR-00319, Hamilton County (Tenn. Crim. App. Feb. 18, 1999), app. denied (Tenn. Sept. 20, 1999), the defendant pled guilty to vehicular homicide by intoxication after striking a pedestrian and leaving the scene.  The trial court sentenced him to four years in confinement and prohibited him from driving for one year.  Noting that the vehicular homicide statute required at least a three-year prohibition, this court prohibited him from driving for four years.  Id., slip op. at 14.

In this case, the defendant is young, has a young son, attends college, and is employed.  The letters submitted to the trial court indicate that he is loved and well-liked by his family and friends.  However, the defendant has made two unsuccessful attempts at rehabilitation and committed the offenses in question only seven months after he last received treatment.  Also, as the trial court noted, he continued to drink alcohol after the wreck in question.  We conclude that a five-year driving prohibition is appropriate in this case.

Based on the foregoing and the record as a whole, we affirm the length and manner of service of the defendant's sentence, but we modify his driving prohibition to five years.

_____
JOSEPH M. TIPTON, JUDGE
